Opinion issued September 27, 2007









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00844-CV






MOSAMMAT LALILA AND SAJEDA, ET AL., (1) Appellants


V.


NIKO RESOURCES, LTD., and NIKO RESOURCES (BANGLADESH),
LTD., Appellees






On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 2005-54021-A






MEMORANDUM OPINION

 Appellants, Mosammat Lalila and Sajeda and approximately 765 other people
who reside in or around Tangratila, Bangladesh (collectively, "the Bangladesh
Residents"), appeal the trial court's orders granting the special appearances filed by
appellees, Niko Resources, Ltd. ("Niko Resources") and Niko Resources
(Bangladesh), Ltd. ("Niko Bangladesh") (collectively, "the Niko Entities"). (2) The
Bangladesh Residents specifically deny that they seek to assert general jurisdiction
over the Niko Entities. In their sole issue on appeal, the Bangladesh Residents assert
that the trial court erred by granting the special appearances, stating,

 (1) The Niko Entities Waived Their Special Appearance[;]


 (2) The Niko Entities Maintained Purposeful, Continuous and
Systematic Contacts With Texas[;]

 

 (3) The Niko Entities Were "Doing Business" in Texas[;]


 (4) Maintaining Jurisdiction Over the Niko Entities Will Not Offend
Traditional Notions of Fair Play or Substantial Justice[; and]


 (5) Niko Resources and Niko Bangladesh Were Operated as a Single
Business Entity With Respect to the Tangratila Project[.]


 We conclude that the Niko Entities' attempts to secure releases from the
Bangladesh Residents is not conduct that constitutes a general appearance. We also
conclude that the trial court did not err by granting the special appearances because
neither Niko Resources nor Niko Bangladesh established the requisite minimum
contacts with Texas to support the exercise of personal jurisdiction. We therefore
need not reach the issue of whether the exercise of personal jurisdiction over Niko
Resources or Niko Bangladesh would offend traditional notions of fair play and
substantial justice. We further conclude that the Bangladesh Residents waived
appellate review of their contention that Niko Resources and Niko Bangladesh were
operated as a single business entity. We affirm the orders of the trial court.

Background

 Niko Bangladesh is a Barbados corporation that is an indirectly wholly-owned
subsidiary of Niko Resources, a Canadian corporation. In 2003, the government of
the Peoples Republic of Bangladesh granted Niko Resources permission to conduct
operations in the Tangratila gas field. Niko Bangladesh entered a contract with China
Petroleum Technology and Development Corporation ("China Petroleum"), a Chinese
corporation with an office in Houston, Texas, to drill an exploration well in the
Tangratila field. On January 7, 2005, the exploration well exploded, injuring the
Bangladesh Residents.

 Niko Bangladesh entered into a contract with GSM Consulting Petroleum
Engineers ("GSM"), a Texas company, to design a relief well. Niko Bangladesh also
contracted with Parker Drilling Company International, Ltd. ("Parker International"),
a Nevada company, with its principal office in Houston, to drill the relief well. GSM
was to supervise and oversee the relief well project. On June 23, 2005, the relief well
caught fire and exploded, causing further injuries.

 On August 19, 2005, the Bangladesh Residents filed suit in district court in
Harris County against Niko Resources and Parker Drilling Company ("Parker
Drilling"), a Texas corporation and the parent of Parker International, asserting
claims for negligence, nuisance, trespass, and conversion. After conducting some
discovery, the Bangladesh Residents filed an amended petition adding Niko
Bangladesh, GSM, China Petroleum, Parker International, and Qasim Sharif (3) as
additional defendants. 

 In their live pleading before the trial court, the Bangladesh Residents alleged
that Niko Resources "formulated a joint enterprise with co-defendants named herein
and participated, designed, planned and formulated a tort that occurred in Harris
County, Texas, which, as a result, occasioned significant and extensive harm to the
Plaintiffs." The Bangladesh Residents further alleged that the Niko Entities,

 retained [China Petroleum], Parker Drilling Company and/or Parker
Drilling Company International Ltd. in Texas, GSM Consulting, Inc. in
Texas and other entities for consulting and to design and prepare an
original well and a 'relief well' at the Tangratila gas well project. The
design, plan, and preparation of the Tangratila project took place in the
State of Texas through several Texas entities, including, but not limited
to, Parker Drilling Company and/or Parker Drilling Company
International Ltd., GSM Consulting, Inc., [China Petroleum's] Houston,
Texas, office, and several other Texas individuals and entities.


Within the "Factual Background" section of the petition, the Bangladesh Residents
alleged that "Niko [Resources], along with its agent and alter ego Niko Bangladesh,
and its agents Qasim Sharif and [China Petroleum] negligently and with malice
improperly drilled, designed, installed, managed, supervised, operated and maintained
the original well such that it resulted in an initial blowout on or about January 7,
2005." Further, the Bangladesh Residents alleged that "[t]he Defendants also
negligently designed a drilling plan for the relief well in Harris County, Texas." The Niko Entities filed special appearances asserting that the trial court lacked
personal jurisdiction over them. Niko Resources filed a special appearance and a
supplemental special appearance. It also filed a brief and supplemental brief in
support of its special appearance, both with exhibits attached. In its special
appearance, Niko Resources contended that its "limited contacts with the state of
Texas are insufficient to justify the assertion of personal jurisdiction over [it]" and
that "the assertion of personal jurisdiction over [it] would offend traditional notions
of fair play and substantial justice." Specifically, Niko Resources contended that the
Bangladesh Residents' "causes of action do not arise out of any activities by Niko
Resources conducted within or purposefully directed toward the state of Texas"
because (1) it was not involved in any way with the contracts regarding the designing,
installing, drilling, managing or operating of the original or relief wells in the
Tangratila fields and (2) the other alleged tort--"failure to take appropriate steps to
remediate and limit the impact of the explosions"--occurred, if at all, outside of
Texas. In support of its position, Niko Resources submitted (1) an affidavit and a
supplemental affidavit from William Hornady, the chief operating officer of Niko
Resources; (2) the affidavit of Ronald Potter, the corporate secretary of Parker
Drilling Company; (3) the affidavit of Rokanuddin Mahmud, a barrister-at-law
licensed to practice law in Bangladesh; (4) the Bangladesh Residents' Responses to
Parker Drilling Company's First Request for Admissions; and (5) articles regarding
the legal system of Bangladesh. Niko Resources expressly incorporated the evidence
submitted by Niko Bangladesh in support of its special appearance.

 Niko Bangladesh also filed a special appearance with exhibits. Niko
Bangladesh made the same contentions as Niko Resources--that the Bangladesh
Residents' "causes of action do not arise out of any activities by Niko Bangladesh
conducted within or purposefully directed toward the State of Texas." In support of
its special appearance, Niko Bangladesh submitted the affidavit of Brian Adolph, the
Vice President and Country Manager for Niko Bangladesh, which included as
exhibits to the affidavit many of the contracts alleged by the Bangladesh Residents
to establish Niko Bangladesh's minimum contacts with Texas.

 In their brief opposing the special appearances, the Bangladesh Residents
asserted,

 Defendant Niko Resources . . . continuously and systematically conducts
business with Texas companies, entities and individuals, and maintains
agent(s), representative(s) or employee(s) in the State of Texas. 
Defendant Niko Bangladesh is the alter ego and/or agent of Defendant
Niko Resources and has also conducted business in the State of Texas
on behalf of Niko Resources.


Specifically, the Bangladesh Residents assert that jurisdiction over Niko Resources
and Niko Bangladesh is proper because

 In the instant matter, Niko Resources and Niko Bangladesh had
purposefully engaged in contacts with Texas entities, as they retained
Parker Drilling, Qasim Sharif, and GSM, all Texas residents, to perform
work on the Tangratila project. Further, such contacts with the State of
Texas form the basis of the instant lawsuit. In other words, the causes
of action arose, and are connected with Defendant's contacts with
Texas.


The Bangladesh Residents also submitted evidence that they contend supports the
exercise of personal jurisdiction over Niko Resources and Niko Bangladesh. The
Bangladesh Residents' exhibits included:

 1. "The contract between Niko and Parker Drilling over the
Tangratila project";


 2. "The contract between Niko and GSM over the Tangratila
project";


 3. "The contract between Niko and Baker Hughes over the
Tangratila project";


 4. "The contract between Niko and Reed Hycalog over the
Tangratila project";


 5. "The contract between Niko and Smith International over the
Tangratila project";


 6. "The contract between Niko and Geoservices, Inc. over the
Tangratila project";


 7. Emails and telephone records allegedly showing Niko Resources'
and Niko Bangladesh's contacts with Texas;


 8. "Power of Attorney from Niko Resources to Qasim Sharif"; and


 9. Invoices, wire transfer records, and airfreight and shipping
documents allegedly showing Niko Resources' and Niko
Bangladesh's contacts with Texas.

 The trial court granted the special appearances. Although requested by the
Bangladesh Residents, the trial court did not issue findings of fact or conclusions of
law.

Personal Jurisdiction

 In their sole issue, the Bangladesh Residents contend that the trial court erred
by granting the Niko Entities' special appearances.

A. The Standard of Review

 A legal conclusion concerning the existence of personal jurisdiction is a
question of law subject to de novo review, but that conclusion must sometimes be
preceded by the resolution of underlying factual disputes. Am. Type Culture
Collection Inc. v. Coleman, 83 S.W.3d 901, 805-06 (Tex. 2002); BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). "When . . . the trial court
does not issue fact findings, we presume that the trial court resolved all factual
disputes in favor of its ruling." Glattly v. CMS Viron Corp., 177 S.W.3d 438, 445
(Tex. App.--Houston [1st Dist.] 2005, no pet.) (citing Am. Type Culture Collection,
83 S.W.3d at 805-06). These implied fact findings may be challenged for evidentiary
sufficiency when a record exists. Id. (citing BMC Software Belg., 83 S.W.3d at 794). 
However, "we review de novo if the underlying facts are undisputed or otherwise
established." Preussag Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex.
App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.). Because the relevant, material
evidence in the case before us is undisputed, we review the complained-of ruling de
novo. See id.

B. The Law of Special Appearance

 A plaintiff bears the initial burden of pleading allegations sufficient to bring
a non-resident defendant within the terms of the Texas long-arm statute. Am. Type
Culture Collection, 83 S.W.3d at 807. "The nonresident defendant then assumes the
burden of negating all bases of jurisdiction in those allegations." Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007).

C. The Law of Personal Jurisdiction

 A court may assert personal jurisdiction over a non-resident defendant if the
requirements of the Due Process Clause of the United States Constitution (4) and the
Texas long-arm statute (5) are both satisfied. Helicopteros Nacionales de Colombia,
S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984); CSR, Ltd. v. Link, 925
S.W.2d 591, 594 (Tex. 1996). "Because the Texas long-arm statute reaches 'as far
as the federal constitutional requirements of due process will allow,' the statute is
satisfied if the exercise of personal jurisdiction comports with federal due process." 
Preussag Aktiengesellschaft, 16 S.W.3d at 113 (quoting CSR, Ltd., 925 S.W.2d at
594). We thus examine only whether a Texas court's exercise of jurisdiction over the
Niko Entities would comport with the requirements of federal due process. See id.

 1. Minimum-Contacts Analysis

 "Federal due process requirements are two-fold." Id. "First, the nonresident
defendant must have purposefully established such minimum contacts with the forum
state that it could reasonably anticipate being sued there." Id. (citing Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)). "If the
nonresident defendant has purposefully availed itself of the privileges and benefits
of conducting business in a state, it has sufficient contacts to confer personal
jurisdiction." Id. (citing Burger King Corp., 471 U.S. at 475, 105 S. Ct. at 2183). 
"Random, fortuitous, or attenuated contacts do not suffice." Id. (citing Burger King
Corp., 471 U.S. at 475, 105 S. Ct. at 2183). It is the nature and quality of the non-resident's contacts, rather than their number, that are important to the minimum-contacts analysis. Id. (citing Guardian Royal Exch. Assur., Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 230 n.11 (Tex. 1991)).

 To assess whether a non-resident defendant has purposefully availed himself
of the privileges and benefits of conducting business in Texas, we examine three
elements. See Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 785
(Tex. 2005). First, only the defendant's own actions may constitute purposeful
availment; a defendant may not be haled into a jurisdiction based solely on the
unilateral activities of a third party. Id. (citing Burger King Corp., 471 U.S. at 475,
105 S. Ct. at 2183). Second, the defendant's acts must be purposeful, and a showing
of random, isolated, or fortuitous contacts is insufficient. Id. (citing Keeton v. Hustler
Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984)). It is the quality,
rather than the quantity of the contacts that is determinative. Silbaugh v. Ramirez,
126 S.W.3d 88, 95 (Tex. App.--Houston [1st Dist.] 2000, no pet.). Third, a
defendant must seek some benefit, advantage, or profit through his purposeful
availment, because jurisdiction is based on notions of implied consent; that is, by
seeking the benefits and protections of a forum's laws, a non-resident consents to suit
there. Id. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100
S. Ct. 559, 567 (1980)). The purposeful availment test should focus on "the
defendant's efforts to avail itself of the forum" and not "the form of the action chosen
by the plaintiff." Moki Mac, 221 S.W.3d at 576. By the same token, a non-resident
may structure a transaction to avoid benefitting from a forum's laws and thereby
avoid being subject to jurisdiction. Michiana, 168 S.W.3d at 785 (citing Burger
King, 471 U.S. at 473, 105 S. Ct. at 2182). For example, a choice-of-law provision
that provides for the application of another forum's laws, while not precluding a
Texas court from exercising jurisdiction, "cannot be ignored when weighing
purposeful availment." IRA Res., Inc. v. Griego, 221 S.W.3d 592, 598 (Tex. 2007)
(citing Burger King, 471 U.S. at 482, 105 S. Ct. at 2187). 

 Minimum-contacts analysis is further divided into general and specific personal
jurisdiction. Preussag Aktiengesellschaft, 16 S.W.3d at 114. In this case, the
Bangladesh Residents alleged specific jurisdiction only. We therefore do not discuss
general jurisdiction. 

 A court may exercise specific personal jurisdiction over a non-resident
defendant if (1) the non-resident purposely directed its activities toward the forum
state or purposely availed itself of the privileges of conducting activities there and (2)
the controversy arises out of or is related to the non-resident's contacts with the forum
state. Freudensprung v. Offshore Tech. Servs., Inc., 379 F.3d 327, 343 (5th Cir.
2004). The non-resident defendant's purposeful conduct, not the unilateral acts of
the plaintiff, must have caused the contact. See Helicopteros Nacionales de
Colombia, S.A., 466 U.S. at 414, 104 S. Ct. at 1872. Although not determinative,
foreseeability is an important consideration in deciding whether the non-resident has
purposefully established minimum contacts with the forum state. Glattly, 177 S.W.3d
at 446-47. 

 Even if a non-resident has purposefully availed himself of the benefits of
conducting business in Texas, there is no specific jurisdiction over the non-resident
unless the cause of action "arises from or is related to an activity conducted within
the forum." BMC Software, 83 S.W.3d at 796. We focus our analysis on the
relationship among the non-resident, the forum, and the litigation to determine if the
alleged liability arises from or is related to an activity conducted in Texas. Counter
Intelligence, Inc. v. Calypso Waterjet Sys., Inc., 216 S.W.3d 512, 517 (Tex.
App.--Dallas 2007, no pet. h.). The focus of the examination must be the nature of
the contacts and the "nexus" that these contacts create with the forum state. 
McDermott v. Cronin, 31 S.W.3d 617, 621-22 (Tex. App.--Houston [1st Dist.] 2000,
no pet.). The "arises from or is related to" requirement of specific personal
jurisdiction requires a "substantial connection" between the non-resident defendant's
contacts and the "operative facts of the litigation." Moki Mac River Expeditions, 221
S.W.3d at 584-85. That is, the non-resident's conduct must have been purposely
directed at or have occurred in the forum and must have a "substantial connection,"
resulting in the alleged injuries, with the litigation's operative facts. Id.; Glattly, 177
S.W.3d at 447.

 2. Fair Play and Substantial Justice

 "Second, if the nonresident defendant has purposefully established minimum
contacts with the forum, the exercise of jurisdiction must comport with fair play and
substantial justice." Preussag Aktiengesellschaft, 16 S.W.3d at 114 (citing Burger
King Corp., 471 U.S. at 477, 105 S. Ct. at 2184 and Guardian Royal, 815 S.W.2d at
231).

D. Discussion

 In their sole issue, the Bangladesh Residents assert that the trial court erred by
granting the Niko Entities' special appearances because (1) the Niko Entities waived
their special appearances; (2) the contacts of both the Niko Entities should be
considered together because they were operated as a single business enterprise; (3)
the Niko Entities had sufficient minimum contacts with Texas to support specific
personal jurisdiction over them; (4) and the exercise of personal jurisdiction over
them comported with fair play and substantial justice.

 1. Waiver of Special Appearance

 The Bangladesh Residents assert that the Niko Entities waived their special
appearances by entering general appearances through their actions that recognized
that the lawsuit was properly pending in the Texas court. In their brief, the
Bangladesh Residents contend that the Niko Entities recognized that the pending
action in the Texas court was proper because of the Niko Entities attempts to

 (1) buy-off individual Appellants cheaply who were represented by
counsel;


 (2) buy-off individual Plaintiffs by inducing them into executing
false "releases"; (6) [and]


 (3) harass individual witnesses who had knowledge of facts pertinent
to this action over a Texas proceeding, namely, the special
appearance hearing . . . .


 The Niko Entities respond that the Bangladesh residents have mis-characterized the evidence concerning the releases. Specifically, the Niko Entities
contend that the alleged releases do not contain a release of either company and that
no evidence shows that either company recognized that the action is properly pending
in the Texas court. 

 A party enters a general appearance, and waives a special appearance, when it
"recognizes by its acts that an action is properly pending." (7) Exito Elecs. Co. v. Trejo,
142 S.W.3d 302, 304 (Tex. 2004) (citing Dawson-Austin v. Austin, 968 S.W.2d 319,
322 (Tex. 1998)). A defendant waives its special appearance by seeking affirmative
action from the court or by acknowledging the court's jurisdiction, such as by filing
and obtaining a hearing on a motion to quash service of process without any
objections to the proceedings, and seeking a continuance from the court. Dawson-Austin, 968 S.W.2d at 322. However, a party's action that does not "address the trial
court" and does not request any affirmative action from the court, such as a Rule 11
agreement (8) filed in court in which the opposing attorneys agree to extend the deadline
for the defendant to file its initial responsive pleading, is insufficient to constitute a
general appearance because that action does not recognize that the lawsuit is properly
before the court. Exito Elecs. Co., 142 S.W.3d at 306 (noting that Rule 11 agreement
in that case "merely acknowledges that [the defendant] is required to respond to the
petition in some manner").

 Although the releases mention that the lawsuit is pending in Texas, they are not
addressed to the court; they do not seek relief from the court; they were not filed with
the court; they do not seek any affirmative action from the court; and they do not in
any way concede that the action is properly pending in the court. See id. We conclude
that the Niko Entities have not "recognize[d] by [their] acts that an action is properly
pending." See id. at 304. We hold that the Niko Entities did not waive their special
appearances by securing releases from the Bangladesh Residents and did not generally
appear. See id.

 2. Niko Entities as Single Business Enterprise

 In this appeal, the Bangladesh Residents contend that "Niko Resources and
Niko Bangladesh were operated as a single business entity with respect to the
Tangratila project" and, thus, "their contacts with Texas, when viewed in the
aggregate, clearly constitute sufficient contacts for the Court to impose jurisdiction
over both."

 An appellant's brief "must contain a clear and concise argument for the
contentions made, with appropriate citations to the authorities and to the record." 
Tex. R. App. P. 38.1(h). Where the appellant does not do so, it waives the issue on
appeal. Holloway-Houston, Inc. v. Gulf Coast Bank & Trust Co., 224 S.W.3d 353,
361 n.3 (Tex. App.--Houston [1st Dist.] 2006, no pet.). In their brief, the Bangladesh
Residents make the following assertion: "There is extensive evidence to show that
Niko Resources is the real party in interest that negotiated, oversaw, and controlled
the Tangratila project, and that Niko Resources and Niko Bangladesh were operated
as a single business entity." The Bangladesh Residents then cite to numerous "facts
and events" in the record to support this. However, the Bangladesh Residents' brief
contains no citation to authority concerning the "single business entity" theory and no
analysis of the numerous facts cited. We conclude that the Bangladesh Residents have
not properly briefed this issue and it is waived. See Tex. R. App. P. 38.1(h); Vickery,
999 S.W.2d at 352-53. We therefore address the minimum contacts of Niko
Resources and Niko Bangladesh separately. See Preussag Aktiengesellschaft, 16
S.W.3d at 121-22 (noting that absent showing of "alter-ego" between parent and
subsidiary corporation, subsidiary's contacts with Texas were not attributable to
parent). 

 3. Minimum Contacts

 The Bangladesh Residents contend that the trial court erred by finding that it
lacked specific jurisdiction over the Niko Entities because they have sufficient
contacts with Texas arising from and related to the underlying cause of action for
negligence. As the Bangladesh Residents summarize in their brief,

 [S]ubstantial work relating to the Tangratila gas well project was
planned, obtained from, performed and implemented in Texas. 
Companies, individuals and equipment from Texas were central to the
design, management, supervision, logistics, implementation and
completion of the Tangratila gas well project. In fact, the Niko Entities
obtained numerous Texas entities and individuals to perform work on the
Tangratila project. The Niko Entities' contacts with these entities and
individuals form the basis of Appellants' lawsuit against the Niko
Entities, namely the negligent design, drilling, and personnel provided in
connection to the Tangratila gas well project. In other words, the causes
of action arose from the Niko Entities' contacts with Texas. As such,
there is sufficient basis for Texas to assert specific jurisdiction over the
Niko Entities for the Tangratila gas well project.

 

The Niko Entities respond that the Bangladesh Residents' claims "do not arise out of
any activities by Niko Resources or Niko Bangladesh conducted within or directed
toward Texas," but instead "arise from events occurring, if at all, in Bangladesh, not
Texas." 


 a. Niko Resources

 The Bangladesh Residents contend that Niko Resources established minimum
contacts with Texas through actions concerning (1) the original well, (2) the relief
well, (3) the former president who was a Texas resident, and (4) a letter from the Chief
Operating Officer about the relief well.

 (1) The Original Well

 The Bangladesh Residents contend that Niko Resources "negligently and with
malice improperly drilled, designed, installed, managed, supervised, operated and
maintained the original well."

 Niko Resources presented the affidavit of William Hornady. Hornady is the
chief operating officer of Niko Resources and has been since December 2004. 
Hornady averred that Niko Resources did not contract with China Petroleum, only
Niko Bangladesh did. Hornady also specifically averred that "Niko Resources did not
design or drill the original exploration well or the relief well" and that it "is not the
operator of either well." Niko Resources did not contract with any company in Texas
to buy or lease equipment or obtain services for its operations in Bangladesh. Further,
the contract for the original well (between Niko Bangladesh and China Petroleum)
provides in a choice of law provision that Canadian law would govern the agreement. 
See Griego, 221 S.W.3d at 598. 

 The Bangladesh Residents did not file any affidavit contradicting Hornady's
affidavit. The Bangladesh Residents contend in their reply brief that "Niko Resources
is the real party in interest with the power and authority to perform the project." 
However, as discussed above, we must treat the contacts of Niko Resources separately
from those of Niko Bangladesh. See Preussag Aktiengesellschaft, 16 S.W.3d at
121-22.

 (2) The Relief Well

 The Bangladesh Residents assert that Niko Resources "negligently designed a
drilling plan for the relief well." Hornady averred in his affidavit that Niko
Bangladesh, not Niko Resources, contracted with GSM and Parker International for
the design and drilling of the relief well. He also stated that Niko Resources did not
design, drill or operate the relief well. Further, the contracts for the relief well
(between Niko Bangladesh and GSM and Parker International) each provide in their
respective choice of law provisions that Canadian law would govern the agreement.
See Griego, 221 S.W.3d at 598.

 (3) Former President was Texas Resident. 

 The Bangladesh Residents also contend that Niko Resources' former president,
who held a special power of attorney to act on behalf of Niko Resources and Niko
Bangladesh, was a Texas resident. However, affidavits from Hornady and Brian
Adolph, the Vice President and Country Manager for Niko Bangladesh, show that
Sharif was the president of Niko Bangladesh and was not an employee of Niko
Resources. Sharif resided in Bangladesh when he was hired and he was granted the
power of attorney, and neither Niko Resources nor Niko Bangladesh sent him to Texas
to conduct any business. Further, Sharif's office for Niko Bangladesh was located in
Bangladesh, not Texas. Finally, the power of attorney identified by the Bangladesh
Residents expressly limits Sharif's authority to "negotiating and carrying out the terms
of any oil and gas transaction within the Country of Bangladesh." (Emphasis added). 

 The Bangladesh Residents do not dispute the facts asserted in Hornady's and
Adolph's affidavits. They have presented no evidence or argument to show that
Sharif's presence in Texas was a purposeful act by Niko Resources to avail itself of
the benefits or privileges of doing business in Texas.

 (4) Letter from Chief Operating Officer about Relief Well

 The Bangladesh Residents also point to the actions of Hornady concerning the
relief well. According to the Bangladesh Residents, Hornady, the Chief Operating
Officer of Niko Resources, not Niko Bangladesh, "contacted . . . Parker [International]
in Houston to negotiate [a] deal for Rig 2555, which was utilized for the Tangratila
[relief well] project." Hornady exchanged emails with Parker International discussing
the availability of Parker International to perform a drilling contract for the relief well. 
These exchanges resulted in Hornady sending a letter of intent to Parker
International's office in Houston. In the letter of intent, Hornady expressly states that
Niko Bangladesh had "determined to award the drilling contract" to Parker
International. The letter also set out some terms, such as a provision that the contract
would have a minimum term of 120 days and that the contract must be executed by
January 19, 2005. The letter was on Niko Resources stationery and signed by Hornady
as "Chief Operating Officer." Niko Bangladesh and Parker International did enter into
a drilling contract for the relief well. Niko Resources is not a party to that contract. 
Further, as noted above, in the final contract between Niko Bangladesh and Parker
International, the parties agreed that Canadian law would govern the agreement.

 In his affidavit, Hornady explained that because of the explosion on the original
well, "it was necessary to begin preparations to immediately drill a relief well" and
that he contacted Parker International "to expedite an agreement between Niko
Bangladesh and Parker International to drill the relief well."

 (5) Analysis

 The above facts do not show that Niko Resources purposefully availed itself of
the benefits and privileges of doing business in Texas. The contracts were entered into
by Niko Bangladesh and not Niko Resources. See Michiana, 168 S.W.3d at 785
(citing Burger King, 471 U.S. at 475, 105 S. Ct. at 2183) (only defendant's own
actions may constitute purposeful availment). Sharif's residency in Texas was not
accomplished by an act of Niko Resources. See id.; see also Keeton, 465 U.S. at 774,
104 S. Ct. at 1478) (purposeful availment not shown by random, isolated, or fortuitous
acts). The one act by Niko Resources' chief operating officer, Hornady, was expressly
done on behalf of Niko Bangladesh and ultimately resulted in a contract between Niko
Bangladesh and Parker International. See Michiana, 168 S.W.3d at 785 (citing World-Wide Volkswagen, 444 U.S. at 297, 100 S. Ct. at 567) (defendant must seek some
benefit, advantage, or profit to show purposeful availment). Further, the contract that
resulted from Hornady's initial communications with Parker International expressly
chose Canadian law as the governing law. See Griego, 221 S.W.3d at 598 (citing
Burger King, 471 U.S. at 482, 105 S. Ct. at 2187) (choice-of-law provision that
provides for application of another forum's laws "cannot be ignored when weighing
purposeful availment"). We therefore hold that the trial court did not err in concluding
that Texas does not have specific jurisdiction over Niko Resources.

 We overrule the Bangladesh Residents' sole issue as it pertains to Niko
Resources.

 b. Niko Bangladesh

 The Bangladesh Residents make the same jurisdictional allegations with respect
to Niko Bangladesh as they do regarding Niko Resources, asserting that Niko
Bangladesh has minimum contacts with Texas through actions concerning (1) the
original well, (2) the relief well, (3) the former president who was a Texas resident,
and (4) a letter from the Chief Operating Officer about the relief well.

 (1) The Original Well and (2) The Relief Well

 The Bangladesh Residents contend that Niko Bangladesh "negligently and with
malice improperly drilled, designed, installed, managed, supervised, operated and
maintained the original well." The Bangladesh Residents also assert that Niko
Bangladesh "negligently designed a drilling plan for the relief well." Specifically, the
Bangladesh Residents assert that by contracting with GSM, a Texas company, to
design the relief well and with Parker International, which had its principal office in
Texas, to drill the relief well, Niko Bangladesh purposefully established minimum
contacts with Texas. The Bangladesh Residents also point out that (1) GSM and
Parker International sent Texas residents to Bangladesh to drill and operate the relief
well; (2) parts for the relief well were shipped from Texas companies to Bangladesh;
(3) Niko Bangladesh telephoned and emailed the Texas companies regarding the relief
well project; and (4) Niko Bangladesh sent some payments for the services and parts
for the relief well project to Texas.

 Assuming without deciding that the contacts identified by the Bangladesh
Residents amount to purposeful contacts with Texas by Niko Bangladesh, this, alone
does not show jurisdiction is proper. "For specific-jurisdiction purposes, purposeful
availment has no jurisdictional relevance unless the defendant's liability arise from or
relates to the forum contacts." Moki Mac, 221 S.W.3d at 579. This requires "a
substantial connection between those contacts and the operative facts of the litigation." 
Id. at 585.

 In Moki Mac, the plaintiffs, Texas residents, sued Moki Mac, a Utah-based
river-rafting outfitter. Id. at 573. After the plaintiffs' son died on a rafting trip 
conducted by Moki Mac, they filed suit in Texas for wrongful death, alleging
negligence and intentional or negligent misrepresentations. Id. Moki Mac filed a
special appearance, which the trial court denied. Id. The court of appeals affirmed,
holding that there was specific jurisdiction over Moki Mac because the
misrepresentation claims arose from and related to Moki Mac's purposeful contacts
with Texas. Id. The supreme court, in reviewing the denial of the special appearance,
first examined Moki Mac's contacts with Texas and held that Moki Mac purposefully
availed itself of the privilege of doing business in Texas, by, among other things,
purposefully directing marketing to Texas, establishing regular communications with
its customers in Texas, and using prior customers to recruit additional customers from
Texas. Id. at 578-59.

 The supreme court, however, determined that Texas did not have personal
jurisdiction because there was not a substantial connection between Moki Mac's
contacts with Texas and the operative facts of the litigation. Id. at 588. Accepting as
true the plaintiffs' claim that, but for the representations made in the brochures and
release sent to the plaintiffs in Texas by Moki Mac, the plaintiffs' son would not have
gone on the rafting trip, the supreme court went on to state,

 However, the operative facts of [the plaintiffs'] suit concern principally
the guides' conduct of the hiking expedition and whether they exercised
reasonable care in supervising [plaintiffs' son]. The events on the trail
and the guides' supervision of the hike will be the focus of the trial, will
consume most if not all of the litigation's attention, and the
overwhelming majority of the evidence will be directed to that question. 
Only after thoroughly considering the manner in which the hike was
conducted will the jury be able to assess [the plaintiffs']
misrepresentation claim. In sum, "the [alleged misrepresentation] is not
the subject matter of the case . . . nor is it related to the operative facts of
the negligence action." 


Id. at 585 (quoting Rush v. Savchuk, 444 U.S. 320, 329, 100 S. Ct. 571, 578 (1980)).

 As in Moki Mac and Rush, here, there is no significant connection between the
litigation and the plaintiff's chosen forum. The Bangladesh Residents do not allege
that the contracts entered into in Texas harmed them. Rather they allege that the
negligent design, drilling, and operation of the well caused their injuries. The
Bangladesh Residents contend that the design of the well was done by GSM in Texas. 
They do not assert that Niko Bangladesh designed the well. At most, the Bangladesh
Residents contend that Niko Bangladesh contracted with a company in Texas that
designed the well. But the contract is not the basis of the Bangladesh Residents'
lawsuit. The operative facts of the Bangladesh Residents' suit concern principally
conduct of the Tangratila well operation in Bangladesh and whether that operation was
conducted with reasonable care. The events in Bangladesh and the conduct of the
drillers and operators of the well in Bangladesh "will be the focus of the trial, it will
consume most if not all of the litigation's attention, and the overwhelming majority
of the evidence will be directed to that question." See Moki Mac, 221 S.W.3d at 585. 
In other words "the [Texas contracts are] not the subject matter of the case . . . nor are
[they] related to the operative facts of the negligence action." See Rush, 444 U.S. at
329, 100 S. Ct. at 578. 

 (3) Former President was Texas Resident. 

 The Bangladesh Residents also contend that Niko Resources' former president,
who held a special power of attorney to act on behalf of Niko Bangladesh, was a Texas
resident. As discussed above, the record shows that (1) Sharif was the president of
Niko Bangladesh; (2) he resided in Bangladesh when he was hired; (3) Niko
Bangladesh did not send him to Texas to conduct any business; (4) Sharif's office for
Niko Bangladesh was located in Bangladesh, not Texas; and (5) the power of attorney
identified by the Bangladesh Residents expressly limits Sharif's authority to
"negotiat[e] and carry[] out the terms of any oil and gas transaction within the Country
of Bangladesh." (Emphasis added).

 Assuming, without deciding, that the residence of Niko Bangladesh's president
amounts to a contact by Niko Bangladesh purposefully directed towards Texas, it has
no substantial connection to this case. The Bangladesh Residents have not alleged,
and the record does not reveal, that Sharif's presence in Texas or anything he might
have done in Texas is, or bears a substantial connection to, an operative fact of the
litigation. To the contrary, Hornady's and Adolph's affidavits state that Sharif did not
engage in any activity in Texas on behalf of Niko Bangladesh regarding the Tangratila
well project.

 (4) Letter from Chief Operating Officer about Relief Well

 The Bangladesh Residents also point to the actions of Hornady, Niko
Resources' chief operating officer. Hornady initiated contact with Parker
International, which ultimately developed into the contract between Niko Bangladesh
and Parker International for the drilling of the relief well.

 However, as discussed above, the contract with Parker International has no
substantial connection to the operative facts of this case. Likewise, the initial contact 
that led to the negotiations that eventually developed into the contract is not an
operative fact of the litigation and it does not bear any substantial connection to any
operative facts. The Bangladesh Residents have not alleged that these negotiations
were wrongful or were the cause of their injuries.

 (5) Analysis 

 Because the contacts alleged by the Bangladesh Residents--contracts with
Texas companies--do not have a substantial connection to the operative facts of this
litigation--the alleged negligent design, drilling and operation of the wells in
Bangladesh--we conclude that the trial court did not err in ruling that there is no
specific jurisdiction over Niko Bangladesh.

 The Bangladesh Residents cite to two cases to support their assertion that the
contacts of Niko Bangladesh discussed above are sufficient to authorize the exercise
of personal jurisdiction over Niko Bangladesh. First, the Bangladesh Residents cite 
CSR Ltd. v. Link for the proposition that "specific jurisdiction is established where the
alleged liability arises from activity within the forum state." 925 S.W.2d at 595. In
CSR, the supreme court held that there was no personal jurisdiction over the non-resident defendant, CSR. Id. at 596. CSR's only contact with Texas was having sold
asbestos that was shipped directly to Houston. Id. at 595. The supreme court, noting
that placing an item in the stream of commerce, alone, does not amount to an act
purposefully directed towards the forum state, stated that the record "contains no
evidence that CSR took any act purposefully directed toward selling or distributing the
raw asbestos fiber in Texas." Id. at 595-96. The instant case is not a "stream of
commerce" case and--other than the general principle cited above--we conclude that
CSR is inapplicable to this case.

 The Bangladesh Residents also cite Cartlidge v. Hernandez, asserting that "[s]o
long as it creates a substantial connection with the forum state, even a single act can
support jurisdiction." 9 S.W.3d 341, 348 (Tex. App.--Houston [14th Dist.] 1999, no
pet.). Although we agree with this general statement of the law, the facts of Cartlidge 
are distinguishable from the facts of this case. In Cartlidge, Cartlidge, a non-resident
attorney entered into contracts with two clients in Texas to represent them in a suit
against a hospital. Id. at 344. He also communicated to the clients in Texas regarding
the status and the progress of his representation. Id. at 345. Later, the clients sued
him for legal malpractice, alleging that he was "negligent in the performance of his
duties under the agreements he signed to represent them." Id. Thus, unlike the
situation in this case, the operative facts of the litigation bore a direct and substantial
connection with the defendant's contact with Texas--the contracts and
communications to Texas were the very basis and focus of the plaintiffs' suit. See id.
at 348. In the instant case, neither Niko Bangladesh's contractual obligations nor its
communications with Texas companies are the focus of this suit. The focus is the
negligent acts of the companies that designed, drilled and operated the well. Because
the facts are distinguishable, Cartlidge is inapplicable.

 We overrule the Bangladesh Residents' sole issue as it pertains to Niko
Bangladesh. (9)

Conclusion

 We overrule the Bangladesh Residents' sole issue in this appeal. We affirm the
orders of the trial court granting the special appearances filed by appellees, Niko
Resources, Ltd. and Niko Resources (Bangladesh), Ltd.



 Elsa Alcala

 Justice


Panel consists of Justices Taft, Jennings, and Alcala. 

APPENDIX


HALIMA BEGUM, Individually, and as next friend of ASHFIA AKHTER
SRITI, MONIRA BEGUM, JASIM UDDIN, ABDUL LATIF, Individually, and as
next friend of BAJASTER, ABDUL JABBAR, ABU SAYAD, SAMAD, MD. NAZIR
HOSSAIN, Individually, and as next friend of HAPIA BEGUM, ABDUL LATIF,
Individually, and as next friend of NOOR MUHAMMAD, HAFIA KHATUN,
JAHIRUL ISLAM, MD. NAZIR HOSSAIN, Individually, and as next friend of
SUJAN, SUMON, ISMAIL ALI, Individually, and as next friend of JARINA
KHATUN, MD. NAZIR HOSSAIN, Individually, and as next friend of MUKTA,
ISMAIL ALI, Individually, and as next friend of ALAMAS, JUNAIDUL ISLAM,
MD. NAZIR HOSSAIN, Individually, and as next friend of SAJUL, ISMAIL ALI,
Individually, and as next friend of ASMA KHATUN, MD. NAZIR HOSSAIN,
Individually, and as next friend of UJJAL, ISMAIL ALI, Individually, and as next
friend of SALMA, TASLIMA KHATUN, RAHIMA BEGUM, Individually, and as
next friend of MOFIZ UDDIN, HAZRAT ALI, ZABBAR, JAHANGIR, JASMIN,
MRS. AMERA BEGUM, Individually, and as next friend of GOLAM MUSTAFA,
RAHIMA BEGUM, Individually, and as next friend of DOLLY, MRS. AMERA
BEGUM, Individually, and as next friend of MD. JHURE MEA, MONOWARA
BEGUM, ABBAS MIA, Individually, and as next friend of SURAYA BEGUM,
ALAMIN, PAPPU, MRS. AMERA BEGUM, Individually, and as next friend of
DELOWARA BEGUM, ABBAS MIA, Individually, and as next friend of HAMID,
MONIKA, KHOKA MIA, Individually, and as next friend of AMBIA, ABDUS
SALAM, Individually, and as next friend of ROMANA BEGUM, KHOKA MIA,
Individually, and as next friend of MOKBUL, TASLIMA, KARIMA, AKTER,
ABDUS SALAM, Individually, and as next friend of RAKIBUL HASSAN, KHOKA
MIA, Individually, and as next friend of ASIA, MUKTER, ABDUS SALAM,
Individually, and as next friend of RUBEL HASSAN, GOLAM MUSTAFA,
Individually, and as next friend of RUPIA AKTER, MARINA AKTER,
ANJUMANARA BEGUM, NASRIN AKTER, Individually, and as next friend of
ABDUL JABBAR, HOSSAIN ALI, Individually, and as next friend of JAMINA
KHATUN, SAKIL AHMED, HASINA KHATUN, FALU MIA, NASRIN AKTER,
Individually, and as next friend of MD. ARIAN MAHMUD, MOHAMMAD ALAK
MIR, Individually, and as next friend of MEHROONESA, MIZANUR RAHMAN,
FIROZA BEGUM, Individually, and as next friend of JAKIR HOSSAIN,
MOHAMMAD ALAK MIR, Individually, and as next friend of ALAMGIR,
SHAHALAM, ABDUL HAKIM, Individually, and as next friend of SEKU MIA,
FOYEJUR KHATUN, FIROZA BEGUM, Individually, and as next friend of
RUHMUT ALI, RINA, MORIAM, SALEHA, Individually, and as next friend of
ABUL KASHEM, NOORJAHAN, NAZMA, RUBINA, RAHAM ALI, HOSSAIN,
Individually, and as next friend of AMINA KHATUN, MD. NURU MIA,
Individually, and as next friend of MAJEDA BEGUM, HOSSAIN, Individually, and
as next friend of SAHARA KHATUN, MD. NURU MIA, Individually, and as next
friend of AMINA, HOSSAIN, Individually, and as next friend of ALIA KHATUN,
RUBEL, MD. NURU MIA, Individually, and as next friend of ASHEA, HOSSAIN,
Individually, and as next friend of JEWEL, FAIZUNNESA, Individually, and as next
friend of FAIZUNNESA, MD. NURU MIA, Individually, and as next friend of ALI
AHMED, HELENA BEGUM, Individually, and as next friend of ABDUL RASHID,
ZAKIR HOSSAIN, MONIR HOSSAIN, AMIN HOSSAIN, MD. NURU MIA,
Individually, and as next friend of MD. MIAR UDDIN, HELENA BEGUM,
Individually, and as next friend of RASHIDA, MD. NURU MIA, Individually, and as
next friend of AYESHA BEGUM, MANIK MIA, Individually, and as next friend of
SURAYA BEGUM, MASUD, SHARMI, SONIA, MASUM, SHARITI, DILBER
NESA, Individually, and as next friend of ABDUL SAMAD, ROBIUL, SUFIA
KHATUN, KAMRUL, SANORA KHATUN, Individually, and as next friend of
ALAUDDIN MIA, SALIM, KAJOL MIA, JOSNA BEGUM, MUSLEM ALI,
Individually, and as next friend of ASSIA, MOHAMMAD ALLAL MIA, Individually,
and as next friend of MINUDDIN, ASHIA KHATUN, HAJARA BEGUM,
Individually, and as next friend of ABDUL BARAK, SHUK ABDULLA, FARID
MIA, HAMID, ATIA, SHAHEEN, SABINA, MD. ROJOB ALI, Individually, and as
next friend of NASIMA AKTER, I DUTAN, JASMIN, AKTER, JAKIR HOSSAIN,
Individually, and as next friend of RAZINA AKTER, TAMANNA AKTER,
SHARMIN AKTER, MD. RAFIQUL ISLAM, Individually, and as next friend of
ROKEYA BEGUM, MD. TAJUL ISLAM, SHERAJUL ISLAM, JAMAL UDDIN,
ABU HANIF, ANOWARA BEGUM, MONOWARA BEGUM, HAZIRA KHATUN,
NURJAHAN, RAHMAT ALI, Individually, and as next friend of DELOWARA
BEGUM, NIMON MIA, SUMON MIA, ABU TAHER, Individually, and as next
friend of HOSNEARA BEGUM, MINARA KHATUN, HABIBULLAH, RAZA
MAHMUD, Individually, and as next friend of MD. AZIM UDDIN, SALMA
BEGUM, FANNA, MOJNU, DUJA, KHADIN, HASSAN UDDIN, Individually, and
as next friend of JOSNA BEGUM, HANIFA, ALAM, HARUN, RAHIMA, AKIMA,
HASINA, SALEHA, ROZINA, TASLIMA, HARUN UR RASHID, Individually, and
as next friend of ABDUL ALI, SOKINA BEGUM, NAZRUL ISLAM, NUR UDDIN,
NIZAM UDDIN, HELEN AKTER, ANOWARA BEGUM, ASMA AKTER,
ASROFA, HASINA AKHTER, Individually, and as next friend of HASINA
AKHTER, FARASH ALI, Individually, and as next friend of ANWARA B,
ANWARA BEGUM, HOSHAIN, AMINA, GOLAPI, OLI MIA, SHAH ALAM,
SHAMIN, RIAZ HOSSAIN, LIZA, NURJAHAN, Individually, and as next friend of
ROSHID MIA, REHANA KHATUN, MD. MOKBUL HOSSAIN, Individually, and
as next friend of LILA AKTER, RANI AKTER, IMAM UDDIN, Individually, and as
next friend of SHAFI UDDIN, ROKEYA BEGUM, JOSHIM UDDIN, MOIN UDDIN,
SUFIA, SUFIA, HASINA, SHAHINA, ALEYA, Individually, and as next friend of
ALAL UDDIN, ROJINA KHATUN, SALIM, KAJOL, SAKIB, MD. ABDUR
RAHMAN, Individually, and as next friend of JAHANARA BEGUM, KULSUM
BEGUM, HANNAN RASHID, LUBNA, HASAN, FARIDA KHATUN, Individually,
and as next friend of SHAHJAHAN MIA, SHIRINA KHATUN, SHAHANA
KHATUN, IMRAN HOSSAIN, Individually, and as next friend of ABUL HOSSAIN,
REHANA BEGUM, REBEKA BEGUM, HONUFA BEGUM, Individually, and as
next friend of HOSNEARA, IQBAL HOSSAIN, MOHAMMAD ISMAIL,
Individually, and as next friend of KHORSHEDA, BAKUL, HALIMA, SHELINA,
MAMATAJ MIA, MASUMA, MOHAMMAD GOLAP MIA, Individually, and as
next friend of NUROON NAHAR, NOOR MOHAMMAD, NOOR AHMED,
KULSUM, BEAUTY, MD. SHARIFUL ISLAM, Individually, and as next friend of
MOJAMMEL HUQ, SOBUJ, SHEWLY, KAMAL HOSSAIN, Individually, and as
next friend of RAZA MIA, KAMLA BEGUM, SHEWLY AKTER, ROJINA,
SHOFIQ, MD. MOTIN, Individually, and as next friend of AROB ALI, RABEYA,
DOLON MIA, BABU, MOSTAFA, MASRUMA, ABU HANIF, Individually, and as
next friend of AYESHA AKTER, MAHBUBUL ALAM, MOHIBUR RAHMAN,
BURHAN UDDIN, FARUK MIA, Individually, and as next friend of AFROZA,
HOSSAIN, KHADIZA, AL-AMIN, ABDUL KHALEK, Individually, and as next
friend of RAMJANI BEGUM, SUJON, IBRAHIM, NARGIS, FARIDA, KAMAL
HOSSAIN, Individually, and as next friend of ABDUL MALEK, ASIFA, NAZMA,
KARINA, JAYNAL, NAZIR HOSSAIN, AZIR MIA, JOSNA, MOHAMMAD
SHAHALAM, Individually, and as next friend of MANZINA AKTER, SHAJUL, MD.
SHEHAB UDDIN, Individually, and as next friend of ABDUL JALIL, HAZIRA
KHATUN, JOINAL, KAMAL, SHARIFA, ABDUL MOJED, Individually, and as
next friend of RASHEDA, MOJIDA, MAJEDA, RAMJAN, MODHU, SUKUR ALI,
Individually, and as next friend of MONOWARA BEGUM, MOHAMMAD ALI,
AHAMMED ALI, IDRIS ALI, UNUS ALI, KULSUM ALI, MINARA AKTER,
Individually, and as next friend of NOBI HOSSAIN, PAVEL AHMED, RUBEL,
MOHAMMAD RAFIQ, Individually, and as next friend of JAHANARA KHATUN,
JAKIR HOSSAIN, MOKTER HOSSAIN, AKTER HOSSAIN, RAHIMA KHATUN,
MOSLEM UDDIN, Individually, and as next friend of SOKHINA, RASEL,
SHARMIN, SIMA, ABDUL KADER, Individually, and as next friend of RUMA
AKHTER, KOHINUR AKHTER, SHURUJ MIA, Individually, and as next friend of
ALEKHA BEGUM, IDRIS MIA, ZAKIR HOSSAIN, SHAHANA BEGUM, REKHA,
SALMA, KULSUM, GULSHAN HOSSAIN, Individually, and as next friend of
TAMIZ UDDIN, JULEKHA KHATUN, ROZINA, ASAD, AMBIA, SHILPI,
JAMILA KHATUN, Individually, and as next friend of SHAFIQ UDDIN, ZOHUR,
MUSLIM, MONI, JOHURA KHATUN, Individually, and as next friend of JOHURA
KHATUN, FAZLUL HUQ, Individually, and as next friend of MAIN, MAIN UDDIN,
FATEMA, MANZINA, MAHMUDA, MONIRA, ASMA AKHTER, Individually, and
as next friend of AMIN MIA, ARIFUL ISLAM, SHARMIN AKHTER, KHUDEJA
BEGUM, Individually, and as next friend of MD. MANIK, MD. MANIK MIA,
MORJINA AKTER, ABDUL BASIT, Individually, and as next friend of RAHIMA,
EMON, RUKSANA, RUKSHANA, MUNTAJ ALI, Individually, and as next friend
of MUSLIM UDDIN, RAHIMA BEGUM, RAJU MIA, KAJAL, SALMA, JOSNA,
CHAN MIA, Individually, and as next friend of AMBIA, UKESME, MUKLES,
JAHIDA KHATUN, MANNAN MIA, ZIAUR RAHMAN, Individually, and as next
friend of NASIMA AKHTER, NAZRUL ISLAM, KHALILUR, HASINA AKTER,
ROZINA AKTER, MOHAMMAD HABIBULLAH, Individually, and as next friend
of ASHRABENNESA, MOHAMMAD ZHAHIDULLAH, MIZAN, PARVIN, MD.
NUR MOHAMMAD, Individually, and as next friend of SHOFER ALI, HOZRAT
ALI, AMINA, MOSHARROF HOSSAIN, Individually, and as next friend of
SHAMIMA, SHORNALI, MUSLIM, FULMALA, FULLMALA, TAJU MIA,
Individually, and as next friend of NOOR JAHAN, RUPBAN, ROKEYA BEGUM,
Individually, and as next friend of SHAMSUL HUQ, JAHIRUL HUQ, ENAMUL
HUQ, MAHAMUDUL ALAM, Individually, and as next friend of JAHANARA
BEGUM, HABIBUR, AL-AMIN, RAKIBUN, HAMIDA, SHARMIN AKHTER,
JULEKHA AKTER, Individually, and as next friend of DULAL MIA, DULAL MIA,
MORIAM AKTER, SHARIF, SHAHARA KHATUN, Individually, and as next friend
of MAHMUD ALI, JORINA BEGUM, MAJIDA, Individually, and as next friend of
AMIN UDDIN, RAHIMA, NAJMA AKTER, Individually, and as next friend of
ASAD MIA, MOSLEMA, SHAHID, SAMSUN NAHAR BEGUM, Individually, and
as next friend of NOOR MOHAMMAD, ABU KALAM, MORIAM BEGUM,
Individually, and as next friend of SHOHAG MIA, ENNAS ALI, FARIDA, ABDUL
BARIK, Individually, and as next friend of MARIUMNESA, JOSNA BEGUM,
RAFIQUL ISLAM, MD. NURUL ISLAM, Individually, and as next friend of
HOSNEARA BEGUM, SHAFIQUL ISLAM, TANIE, TAKMINA, NAZRUL ISLAM,
Individually, and as next friend of ABUL HOSSAIN, RABEYA BEGUM, NOOR
MOHAMMAD, RAHIMA, ASMA, JAHARA KHATUN, Individually, and as next
friend of HAJARA, OSMAN GONI, Individually, and as next friend of KOHINUR
AKTER, MORIAM AKTER, RUKSHANA, ALA UDDIN, Individually, and as next
friend of SANOWARA KHATUN, ALEYA KHATUN, SALIM, KAJOL, RESHMA,
SAKIB, ROJINA, IDRIS ALI, Individually, and as next friend of SHAFIA KHATUN,
YASMIN, TAMANNA, ABDUL MANNAF, Individually, and as next friend of
FULBANU, RAMJAN, SUBOL, AL-AMIN, SHAHID, FATEMA, NAZMA, ABDUR
RAHIM, Individually, and as next friend of HAMIDA BEGUM, SHAHNUR,
SHAHANAZ, ABDUL RAHIM, Individually, and as next friend of MONTAJ,
NURJAHAN, AMINA KHATUN, FATEMA, BOBITA, NAZRUL, SUMON,
MOHAMMAD SAMSUDDIN, Individually, and as next friend of SAKHA BEGUM,
BIPLOB MIA, RUBEL MIA, AKHLIMA BEGUM, ATAUR ALI, Individually, and
as next friend of WAZIFA KHATUN, MURAD, MD. ASHRAF UDDIN, Individually,
and as next friend of SHERINA KHATUN, AYESHA, MALU, NAJMA, ABDUL
MANNAN, Individually, and as next friend of ANOWARA BEGUM, KHOKON,
SADIA, LAKMOT ALI, Individually, and as next friend of HODEJA BEGUM, AL-AMIN, ZAYEN, ZAYEM, MD.SULTAN, Individually, and as next friend of ROMIJA
KHATUN, MOROM ALI, SHOPNA KHATUN, KHADEJA, SANIA, KAMAL
HOSSAIN, Individually, and as next friend of JAMAL HOSSAIN, SHAHBUDDIN,
SHARIFA KHATUN, HAZERA BEGUM, ABDUL JALIL, MOSAMMAT LALILA,
Individually, and as next friend of SURAVI AKHTER, SULTAN ISLAM,
Individually, and as next friend of AMINA BEGUM, AYESHA BEGUM, JASMIN,
TAHERA, KASHEM, FAZILAT, HALIM MIA, Individually, and as next friend of
HARESA BEGUM, ARIFA BEGUM, SHIPA AKHTER, SUKURI BEGUM,
Individually, and as next friend of ABDUL JABBAR, MOSAMMAT RINA AKTER,
MD. TAZEL MIA, Individually, and as next friend of TASLIMA BEGUM, UMME
KULSUM, AFIA KHATUN, Individually, and as next friend of TAZEUDDIN,
NASIMA KHATUN, NAJMA KHATUN, DOLLY KHATUN, RABIA BEGUM,
Individually, and as next friend of ABUL HOSSAIN, NUR MOHAMMAD, NAZRUL
ISLAM, RAHIMA BEGUM, ASMA BEGUM, SAJEDA, Individually, and as next
friend of ANWAR HOSSAIN, SAIFUL ISLAM, HAZRAT ALI, Individually, and as
next friend of SHANA AKHTER, HAZERA KHATUN, RUSSELL NOOR, ABDUL
RAHMAN, Individually, and as next friend of AMINA KHATUN, BOGDAL
MAMUN, RINA BEGUM, Individually, and as next friend of DULAL, UKIL,
IBRAHIM, ISMAIL, NAIMA, KHURSHIDA, MOHAMMAD BADSAH MIA,
Individually, and as next friend of AMINA KHATUN, HOZILA AKHTER SHEULI,
ABDULLAH AL- MAMUN, HASSINA AKTER, Individually, and as next friend of
NASIR UDDIN, HAMIDA, NAJMA, POLLY, BEDON BIBI, Individually, and as
next friend of SURUZ ALI, AKHTER MIA, RIPON MIA, ABDUL KHALIQ,
Individually, and as next friend of OZUFA KHATUN, ZAKIR HOSSAIN, JAMAL
HOSSAIN, KAMAL HOSSAIN, IMAN HOSSAIN, ASIA KHATUN, KHODEJA
KHATUN, ASHIA KHATUN, Individually, and as next friend of ABDUL
MUTALIB, KIBER HOSSAIN, ARIF HOSSAIN, SHARIF HOSSAIN, MARUF
HOSSAIN, SABINA, SULTANA, MINARA, ABUL KASHEM, Individually, and as
next friend of NAIMA, KOLIFA, HAZERA KHATUN, REHANARA,
SHAHENARA, MONIRA, MIZANUR RAHMAN, Individually, and as next friend
of ANOWARA BEGUM, ABDUR RASHID, RAZIA, SAMIA AKHTER, AL-AMIN,
SHAHILA KHATUN, Individually, and as next friend of ABDUL RAZZAK, SOJIB,
SHARMIN, SHAKIL AHMED, ABDUL KARIM, Individually, and as next friend of
ROKIA KHATUN, LITON MIA, ASMINA KHATUN, SUFIA, Individually, and as
next friend of YUSUF ALI, FARUK, KABIR MIA, ASMA KHATUN, NAZMA
AKHTER, RUMA, HAROON-UR RASHID, Individually, and as next friend of
AYESHA KHATUN, HOSSAIN MIA, SUFIA BEGUM, Individually, and as next
friend of MUSLIM UDDIN, ROKIB MIA, MUSLIMA, SAKIB MIA, SUMI
AKHTER, Individually, and as next friend of PARUL AKHTER, MODINA
KHATUN, Individually, and as next friend of TAJUL ISLAM, MUBARAK MIA,
MUSARRAF MIA, ROKEYA BEGUM, RANI BEGUM, NAYAN MIA, LAILEE
BEGUM, Individually, and as next friend of ABDUL MALEK, SAMSUN NAHAR,
NURUNAHAR, HALIMA, AL-AMIN, LIPON, MIRAJUL, NOORJAHAN,
Individually, and as next friend of HASEN MIA, JULIA BEGUM, MOUSUMI
AKHTER, SHOHAG MIA, TAMIM MIA, RIDOY MIA, NASIMA KHATUN,
Individually, and as next friend of RAZAB ALI, JASMIN, ABUL KASHEM,
Individually, and as next friend of REKHA BEGUM, KADRIA SULTANA,
MAHABUB, NURUN NAHAR, Individually, and as next friend of ABDUL BATEN,
TAZUL ISLAM, SHAHIDUL ISLAM, ASMA AKHTER, HASINA AKHTER, ABUL
KAMAL, Individually, and as next friend of ALEYA KHATUN, YASMIN AKHTER,
SHEULI AKHTER, RUBEL MIA, BOKUL AKHTER, ASAD MIA, Individually, and
as next friend of JULASA KHATUN, RUNA, NABI, SHOFOR ALI, ASFIA
KHATUN, Individually, and as next friend of MAMUN AHMED, ZINIA, HOSNE-
ARA BEGUM, Individually, and as next friend of MOHAMMAD RAMJAN,
MOHAMMAD RAMZAN, RUKHSANA AKHTER, REHANA AKHTER,
Individually, and as next friend of HOSSAIN ALI, ABDUL KHALEQ, Individually,
and as next friend of MOMENA BEGUM, MOKHLES MIA, EKHLAS MIA, ELIAS
MIA, PARVIN AKHTER, SHAFIQUL ISLAM, Individually, and as next friend of
MARZI AKHTER, RESHMI, ZAKIR HOSSAIN, Individually, and as next friend of
RAFEZA AKHTER, TAMANNA AKHTER, SHARMIN AKHTER, MEHER-UN-NESSA, Individually, and as next friend of SHIRINA BEGUM, MOHAMMAD
ALAL MIA, Individually, and as next friend of ASMA KHATUN, ABDUL MATIN,
Individually, and as next friend of LAAL BANU, ANOWAR, ABDUR RAHIM,
RAHMAT ALI, Individually, and as next friend of KHODEZA KHATUN, POPI
AKHTER, SHARMI AKHTER, RAMIZ UDDIN, Individually, and as next friend of
ZAIDA KHATUN, AKRAMUL ISLAM AYON, RUKHSANA AHMED UMA,
BAZLUL MAMUN, Individually, and as next friend of MOUSUMI AKHTER. 


1. A list of all appellants is attached as an appendix to this opinion.
2. After the Bangladesh Residents filed a notice of appeal from the interlocutory order
granting the Niko Entities' special appearance, the trial court, on the Bangladesh
Residents' motion, severed the Niko Entities from the underlying case, thus rendering
a final judgment. The Bangladesh Residents filed an "Amended Notice of Appeal,"
which we treat as a notice of appeal from the final judgment. As a matter of internal
procedure, we consider the appeal from the final judgment under the cause number
originally assigned to the interlocutory appeal. 
3. Qasim Sharif, a Texas resident, was president of Niko Bangladesh and attorney-in-fact for both Niko Resources and Niko Bangladesh.
4. U.S. Const. amend. XIV, § 1.
5. See Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997).
6. The "releases" stated,


 I the Undersigned [Name] Of Tengra Tilla Village come to Know that some
falsifier filed up a suits from come pensation from niko using my name to
Houston Tk. [sic] 77008 (suit Ref 1225 north loop West suit-810 Ad in
America TK. [sic] Houston 4-24-4) due to blow out of January 07.2005 and
Jun 24.2005 at Chhatak Gas field tengra tilla a under Sunamgonj District
Bangladesh quite fase. I am illiterate and in fact I never asked any body to
create and file any suit on the above cited in this regand if the case is started
. I strongly deny it and unwill to continue it.
7. A party also enters a general appearance and waives a special appearance if it
"invokes the judgment of the court on any question other than the court's jurisdiction" 
or "seeks affirmative action from the court." Exito Elecs. Co. v. Trejo, 142 S.W.3d
302, 304 (Tex. 2004) (citing Dawson-Austin v. Austin, 968 S.W.2d 319, 322 (Tex.
1998)). These situations do not apply. 
8. Tex. R. Civ. P. 11.
9. Having determined that the Niko Entities did not have sufficient minimum contacts
with Texas to support jurisdiction, we need not address the Bangladesh Residents'
additional contention that the exercise of jurisdiction would comport with traditional
notions of fair play and substantial justice. See Preussag Aktiengesellschaft v.
Coleman, 16 S.W.3d 110, 126 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd
w.o.j.)