Blaine **CARTLIDGE**, Appellant,

v.

Aida **HERNANDEZ** and Martha **Kolpek**, Appellees.

No. 14–99–00232–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 2, 1999.

John H. Boswell, Matthew W. Brown, Houston, for appellant.

Mark W. Collmer, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices ANDERSON and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

The issue in this case involves the validity of the assertion of in personam jurisdiction over a non-resident attorney. Appellees Aida Hernandez and Martha Kolpek sued Blaine Cartlidge (Cartlidge) in Harris County asserting legal malpractice. On February 22, 1999, Cartlidge, appellant, entered a special appearance challenging the trial court's jurisdiction over him. The trial court denied appellant's special appearance. Cartlidge brings this interlocutory appeal pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7), challenging only the trial court's denial of his special appearance and motion to dismiss. We affirm the judgment of the trial court.

## I.

### Factual Background

We will limit the discussion of the facts to only those pertinent to the question of the trial court's jurisdiction. Appellees Hernandez and Kolpek, plaintiffs below, engaged Cartlidge to represent them in a lawsuit against DuPont and Methodist Hospital. Hernandez and Kolpek solicited Cartlidge to represent them and file suit in Nevada through Lowell Cage, a Houston attorney, who was familiar with Cartlidge's work in products liability litigation in Nevada. Hernandez is a Texas resident, but Kolpek is a resident of Oklahoma.[1] Cartlidge is a licensed Nevada attorney who represented at least twenty-five clients from around the country in such litigation in Nevada. Cartlidge is not licensed to practice law in Texas.

Appellant sent four documents into Texas which constituted offers to provide legal representation for Hernandez and Kolpek against DuPont, and others. First, appellant sent letter agreements to Hernandez and Kolpek accepting representation and specifying the split of the fees between Cage and Cartlidge. These are three party agreements, and are on the letterhead of Blaine E. Cartlidge, attorney at law. Each letter agreement specifies that Cartlidge will be lead counsel.

Second, Cartlidge sent Hernandez and Kolpek retainer agreements. These agreements are also on Cartlidge's letterhead, but it is an agreement only between appellant and the clients. The first paragraph of the two retainer agreements is identical except for the parties' names, and provides as follows:

It is hereby agreed by and between [Client] and Blain E. Cartlidge, or his duly authorized representative, (hereafter "Attorney"), that Attorney shall represent Client against E.I. DuPont de Nemours & Co., and others, for injuries and/or damages sustained arising out of the TMJ implant surgery and the consequences therefrom.

These retainer agreements are generic in nature in that they do not specify that appellant will only provide representation in Nevada. These agreements also specifically provide that Cartlidge has full authority to associate other attorneys, and retain such experts and other assistants which he deems necessary to prosecute the client's case against DuPont and others.

Both the letter agreements and the retainer agreements were sent to Houston for signature by Hernandez and Kolpek. These documents were duly signed there by the clients and returned to Cartlidge in Nevada. Although the contracts were signed by the appellees in Texas, it is undisputed that Cartlidge neither signed the contracts nor performed any of his obligations under the contracts in Texas.

1. We do not address the effect, if any, Kolpek's status as an Oklahoma resident may have on her participation in the trial of this cause because no appellate issue addressing that matter has been presented in this appeal.

In addition to the agreements Cartlidge sent to his clients in the underlying lawsuit, Cartlidge has had other significant contacts with this State. First, from the record, it appears Cartlidge represented ninety-three clients, including Hernandez, in a product liability class action against Methodist Hospital, litigated in Harris County. Second, in addition to the appellees, Cartlidge represented several other Texas residents in product liability litigation in Nevada.[2] It is also apparent from the record Cartlidge filed sixty-one bankruptcy claims in Harris County against Vitek, a defendant in the product liability litigation, on behalf of various clients. Finally, Cartlidge testified he periodically sent letters to Hernandez and Kolpek to keep them apprised of the progress of their litigation in Nevada.

## II.

### The Lawsuit

Hernandez and Kolpek filed suit against Cartlidge and Cage in Harris County. The original petition asserts that Cartlidge was negligent in the performance of his duties under the agreements he signed to represent them. Specifically, they asserted that Cartlidge filed claims on their behalf against The Methodist Hospital in Nevada, but that those claims were dismissed because the Nevada courts did not have jurisdiction over the hospital. The plaintiffs also contended that because Cartlidge failed to either refile the case in Texas where the hospital was subject to the jurisdiction of the courts, or refer the case to anyone who could refile the case in Texas, he allowed the claim to lapse. Plaintiffs also complained that Cartlidge allowed the claim to lapse without advising them that the claim could have been filed in Texas[3] where the hospital was subject to the jurisdiction of the courts.

Cartlidge filed a special appearance contesting the trial court's jurisdiction over him. The court denied the special appearance.

## III.

### Standard of Review

Appellant contends on appeal that the trial court's assertion of in personam jurisdiction over him does not comport with due process because he has not had the requisite minimum contacts with Texas to establish either general or specific jurisdiction. We will consider this issue as a challenge to the sufficiency of the evidence to support the trial court's ruling on the special appearance. *See Carbonit Houston, Inc. v. Exchange Bank,* 628 S.W.2d 826, 829 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

 When a defendant challenges a court's exercise of personal jurisdiction through a special appearance, he carries the burden of negating all bases of personal jurisdiction. *See Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex. 1985). Where, as here, no findings of fact or conclusions of law were requested by Cartlidge or filed by the trial court relating to its ruling on the special appearance, it is implied that the trial court made all necessary findings of fact in support of its judgment. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). A reviewing court must affirm if the judgment can be upheld on any legal theory supported by the evidence. *See Nikolai v. Strate,* 922 S.W.2d 229, 240 (Tex.App.—Fort Worth 1996, pet. denied) (citing *Clark v. Noyes,* 871 S.W.2d 508–12 (Tex.App.—Dallas 1994, no pet.)).

 When a personal jurisdiction question is reviewed, an appellate court must review all of the evidence before the trial court relating to the special appear-

---

**2.** According to his testimony at the special appearance hearing, fewer than ten but more than two of his clients were from Texas.

**3.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.064 (Vernon 1997).

ance. *See Linton v. Airbus Industrie,* 934 S.W.2d 754, 757 (Tex.App.—Houston [14th Dist.] 1996, writ denied), *cert. denied,* 525 U.S. 1145, 119 S.Ct. 1039, 143 L.Ed.2d 47 (1999). But the review is not a de novo review. *See Fish v. Tandy Corp.,* 948 S.W.2d 886, 892 (Tex.App.—Fort Worth 1997, pet. denied). The proper standard for reviewing the evidence in a case involving a challenge to *in personam* jurisdiction is factual sufficiency. *See id.* After reviewing all of the evidence, we may reverse the decision of the trial court only if its ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Runnells v. Firestone,* 746 S.W.2d 845, 849 (Tex.App.—Houston [14th Dist.]), *writ denied per curiam,* 760 S.W.2d 240 (Tex.1988).

 The existence of personal jurisdiction is a question of law. The trial court's conclusions of law regarding a special appearance are reviewed de novo. *See Linton,* 934 S.W.2d at 757. If a special appearance is based on undisputed or established facts, an appellate court shall conduct a de novo review of the trial court's order granting a special appearance. *See Conner v. ContiCarriers and Terminals, Inc.,* 944 S.W.2d 405, 411 (Tex. App.—Houston 1997, no pet.).

## IV.

### Personal Jurisdiction

 A court may assert personal jurisdiction over a nonresident defendant only if the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied. *See CSR Ltd. v.*

*Link,* 925 S.W.2d 591, 594 (Tex.1996); *see also Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Texas long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant who does business in Texas. In addition to a short list of activities that constitute doing business in Texas,[4] the statute provides "other acts" by the nonresident can satisfy the requirement. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991). The Texas Supreme Court has repeatedly interpreted this broad statutory language "'to reach as far as the federal constitutional requirements of due process will allow.'" *CSR,* 925 S.W.2d at 594 (quoting *Guardian Royal,* 815 S.W.2d at 226); *see also U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977). Thus, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *See CSR,* 925 S.W.2d at 594.

 The United States Constitution permits "a state court [to] take personal jurisdiction over a defendant only if it has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Dawson–Austin v. Austin,* 968 S.W.2d 319, 326 (Tex.1998); *CMMC v. Salinas,* 929 S.W.2d 435, 437 (Tex.1996). A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *See CSR,* 925

---

4. The activities specifically identified as "doing business" in Texas include the following:
 (1) contracting by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
 (2) committing a tort in whole or in part in this state;
 (3) recruiting Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.
 TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997).

S.W.2d at 594, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). However, a defendant should not be subject to the jurisdiction of a foreign court based upon "random," "fortuitous," or "attenuated" contacts. *CSR*, 925 S.W.2d at 595 (quoting *Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174).

### A. Minimum Contacts

A defendant's contacts with a forum can give rise to either general or specific jurisdiction.[5] General jurisdiction is present when a defendant's contacts are continuous and systematic, allowing the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *See CSR*, 925 S.W.2d at 595; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). General jurisdiction requires a showing the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *See CSR*, 925 S.W.2d at 595; *Guardian Royal*, 815 S.W.2d at 228. On the other hand, specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *See CSR*, 925 S.W.2d at 595; *see also Happy Indus. Corp. v. American Specialties, Inc.*, 983 S.W.2d 844, 848 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.). It requires a substantial connection between the nonresident's action or conduct directed toward Texas and the cause of action in Texas. *See Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 650 (Tex.App.—Houston [14th Dist.] 1992, no writ). When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation. *See id.* We will affirm the trial court's ruling finding *in personam* jurisdiction if specific jurisdiction is supported by the evidence. *See Nikolai*, 922 S.W.2d at 240.

In analyzing minium contacts, it is not the number but rather the quality and nature of the nonresident's contacts with the forum state that is important. *See Memorial Hosp. Sys.*, 835 S.W.2d at 650.[6] The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant which create a substantial connection with the forum state. *See Guardian Royal*, 815 S.W.2d at 226. The substantial connection between the nonresident defendant and the forum state necessary for a finding of minimum contacts must come about by action or conduct of the nonresident purposefully directed toward the forum state. *See id.* However, the constitutional touchstone remains whether the nonresident defendant purposefully estab-

5. Our jurisdictional analysis is limited here to specific jurisdiction. However, while Cartlidge's other contacts with Texas through the Methodist Hospital class action and the Vitek bankruptcy proceedings suggest there are enough continuous and systematic contacts with this State to warrant general jurisdiction, we do not reach that issue. Because of the lack of findings of fact, we may affirm the trial court's judgment if the evidence supports specific jurisdiction. *See Nikolai*, 922 S.W.2d at 240.

6. Specific jurisdiction may be based on a single telephone call. In *Memorial Hospital System*, Carlos Mejia, an employee of Robert Kelly Company, went to Memorial Hospital (Memorial) for a work related injury. *See* 835 S.W.2d at 648. Memorial called Fisher Insurance Company (Fisher) to verify workers' compensation coverage for Mejia. *Id.* Fisher advised Memorial during this telephone call that employees of Robert Kelly Company were covered by workers' compensation insurance. *Id.* Later, it was determined that the Robert Kelly insurance policy did not provide coverage in Texas. *Id.* Memorial sued Fisher who objected to jurisdiction in a special appearance. *Id.* This Court addressed the issue of whether a Texas court has personal jurisdiction over a defendant whose sole contact with the forum state was to send fraudulent misrepresentations through a single telephone call, and held that Fisher had sufficient minimum contacts with Texas to support specific jurisdiction. *Id.* at 651.

lished minimum contacts in the forum state. *See id.*, citing *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174. This requirement that a defendant purposefully avail himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. *See Burger King*, 471 U.S. at 475, 105 S.Ct. 2174.

■ Foreseeability is also an important consideration in deciding whether the nonresident has purposefully established "minimum contacts" with the forum state. *See id.* The concept of foreseeability is implicit in the requirement that there be a substantial connection between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *See id.* If the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum state, he must reasonably anticipate being haled into court there to answer for his actions. *See Memorial Hosp. Sys.*, 835 S.W.2d at 650.

■ Here, Cartlidge is being sued because of alleged legal malpractice committed by him during the course of his legal relationship with Hernandez and Kolpek. During the course of this legal relationship, Cartlidge corresponded with Hernan-

dez and Kolpek, either through Lowell Cage or directly, several times. The acceptance letters and retainer agreements that constituted the contracts between the parties, and the progress reports Cartlidge admitted he sent Hernandez and Kolpek, taken together, demonstrate Cartlidge had purposeful, repeated, if not frequent, contacts with the State. Plaintiffs' claims below against Cartlidge arise out of the contracts they entered into with him in Texas. Thus, it is irrelevant to our analysis where the alleged tort of malpractice occurred.[7]

■ With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who reach out beyond one State and create continuing relationships and obligations with citizens of another State[8] are subject to regulation and sanctions in the other State for consequences of their activities. *See Burger King*, 471 U.S. at 473, 105 S.Ct. 2174. Indeed, so long as it creates a substantial connection with the forum State, even a single act can support jurisdiction. *See id.* at 475 n. 18, 105 S.Ct. 2174. Cartlidge's contacts with Texas consist of the four contracts, two with each client, and his subsequent correspondence with them regarding the progress of their lawsuits. An analogous fact pattern has been subjected to the due process minimum contacts analysis and the contacts were found to constitute a substantial connection with the forum permitting the assertion of specific jurisdiction.

7. Appellant conceded at oral argument that Cartlidge was "doing business" in Texas as defined in the Texas long-arm statute because he contracted with a Texas resident by mail and part of that contract was to be performed in this state. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(1) (Vernon 1997) (see note 4 above). Because he conceded this point, it is unnecessary to our analysis where Cartlidge allegedly committed malpractice. That analysis would only be relevant if we were analyzing appellant's minimum contacts under the "commission of a tort" section of the Texas long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2) (Vernon 1997). Because the "tort" section of the long-arm statute is not relevant to our analysis, much of appellant's case law in support of his argu-

ment that jurisdiction will not attach because no tort was committed in Texas is distinguishable. *See Kowalski v. Doherty, Wallace, Pillsbury and Murphy*, 787 F.2d 7, 10 (1st Cir. 1986) (confining analysis to tort claim); *see also Cote´v. Wadel*, 796 F.2d 981, 984 (7th Cir.1986) (defining long-arm jurisdiction over non-resident defendants "in any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant").

8. Cartlidge testified that when he entered into the contracts with Hernandez and Kolpek he knew that a representative for those plaintiffs would need to conduct discovery in Texas.

Thus, in *McGee v. International Life Insurance,* the Supreme Court held that the Due Process Clause did not prevent a California court from asserting jurisdiction over a nonresident defendant where the suit was based on a contract which had substantial connection with California. *See McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). There, Lowell Franklin, a California resident, purchased life insurance from a nonresident insurance company. *Id.* at 221, 78 S.Ct. 199. When Franklin died, his beneficiary tried to collect the proceeds, but the company refused to pay. *Id.* at 222, 78 S.Ct. 199. The Court held that a substantial connection between the contract and the forum State was extant because the contract was delivered in California, the premiums were mailed from there and the insured was a resident of California when he died. *Id.* at 223, 78 S.Ct. 199. Due process requirements were satisfied because the suit was based on a contract which had a substantial connection with California. *Id.* The Court also noted that any inconvenience to the insurer as a result of being held amenable to suit in California where it had this contract would not amount to a denial of due process. *Id.* at 224, 78 S.Ct. 199.

The analysis in *McGee* can be fairly applied here. It is sufficient for purposes of due process minimum contacts that the suit brought by Kolpek and Heranadez is based on contracts which have a substantial connection with Texas. Because the substantial connection between Cartlidge and his clients in Texas came about by his actions which were purposefully directed toward Texas, his contacts with this State are not random, fortuitous or attenuated. Indeed, Cartlidge's contacts with Texas are imbued with a quality and nature that insulates them from any such challenge. Inasmuch as these contracts had a substantial connection with Texas, Cartlidge could foresee that if his performance were deficient it would inflict economic injury on a resident of Texas. We find the assertion of in personam jurisdiction over Cartlidge here would comport with the due process analysis in *McGee. See also Rowland & Rowland, P.C. v. Texas Employers Indem. Co.,* 973 S.W.2d 432, 436 (Tex.App.—Austin 1998, no pet.) (holding that letter sent by Tennessee law firm to TEIC in Texas promising to protect its subrogation interest in lawsuit in Tennessee coupled with law firm's later distribution of substantial portion of judgment proceeds to firm's Texas clients, contrary to its promise to TEIC, were sufficient purposeful minimum contacts with Texas to satisfy due process).

■ The quality and nature of Cartlidge's contacts with Texas, enhanced by the interest of Texas in a suit involving a nonresident attorney representing individuals in Texas,[9] provide an adequate basis for the assertion of jurisdiction in this case. Accordingly, we find that Cartlidge's purposeful contacts with Kolpek and Hernandez in Texas constituted sufficient minimum contacts to support specific jurisdiction and satisfy due process requirements.

### B. Fair Play and Substantial Justice

■ Having determined that Cartlidge had sufficient minimum contacts with Texas, we must now decide whether the trial court's assertion of jurisdiction comports with "traditional notions of fair play and substantial justice." *See Guardian Royal,* 815 S.W.2d at 228. In this inquiry, it is incumbent upon the defendant to present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Id.* at 231 (quoting *Burger King,* 471 U.S. at 477–78, 105 S.Ct. 2174). Only in rare cases will the exercise of jurisdiction not comport with fair play

---

9. While a State's interest in a suit by itself is not enough to provide a basis for jurisdiction, it can serve to enhance the contacts with the forum to a quality that justifies the assertion of jurisdiction. *See Texas Commerce Bank Nat'l Ass'n v. Interpol '80 Ltd.,* 703 S.W.2d 765, 774 (Tex.App.—Corpus Christi 1985, no writ).

and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Id.; see also Schlobohm,* 784 S.W.2d at 358 (stating that because minimum contacts analysis encompasses so many fairness considerations, it has become less likely that exercise of jurisdiction will fail fair-play analysis).

■ In support of his argument that the exercise of jurisdiction in this case would offend traditional notions of fair play and substantial justice, Cartlidge notes he has never met the appellees, Hernandez and Kolpek, he has never been to Houston prior to this malpractice case, and traveling to Houston would be a tremendous burden on him because he is a self-employed solo practitioner and he is married with two infant children. While we empathize with Cartlidge's position, we cannot agree that a trial on the merits in Houston would offend traditional notions of fair play and substantial justice.

Moreover, the State of Texas has a substantial interest in this litigation because the appellant contracted with and represented the appellees in several different stages of the underlying litigation.[10] First, Mr. Cartlidge accepted the Texas-based representation of Hernandez and Kolpek, and did indeed represent them in the underlying lawsuit. Second, those contracts that formed the basis of Mr. Cartlidge's representation were executed and partially performed in Texas. Third, appellant continued to represent one of the appellees during the Methodist Hospital class action which was litigated in Texas. In these transactions, appellant has purposefully availed himself of the privileges and benefits of conducting business in Texas. *See Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174. Therefore, we do not agree the trial court's exercise of personal jurisdiction over Cartlidge would offend traditional no-

tions of fair play and substantial justice. Finally, appellant's lack of physical presence in this State and the inconvenience of attending a trial here have been repeatedly rejected as proper bases for denial of personal jurisdiction. *See Burger King,* 471 U.S. at 477, 105 S.Ct. 2174; *see also Rowland,* 973 S.W.2d at 436. While the inconvenience of the forum is to be considered, it is not a constitutional obstacle to the assertion of jurisdiction if due process is otherwise satisfied. *See Texas Commerce Bank,* 703 S.W.2d at 774.

In connection with the inquiry of whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice, it is incumbent on appellant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Guardian Royal,* 815 S.W.2d at 231 (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). Here, Cartlidge has not identified any other considerations that would render jurisdiction in Texas unreasonable, or that provide him with a vested right not to be sued in Texas.

## V.

### Conclusion

Applying the foregoing principles to the case at hand, we hold there is factually sufficient evidence to support the trial court's ruling that the assertion of personal jurisdiction over Cartlidge for the alleged legal malpractice does not offend due process.

Accordingly, we overrule appellant's sole appellate issue and affirm the judgment of the trial court.

---

**10.** The importance of the legal profession in our system of government and, therefore, the importance of maintaining integrity within the profession, constitutes a legitimate state interest. *See Weiss v. Commission for Lawyer Discipline,* 981 S.W.2d 8, 25 (Tex.App.—San Antonio 1998, pet. denied). A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *See Burger King,* 471 U.S. at 473, 105 S.Ct. 2174.