

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-462-CV

MOUNTAIN STATES EMPLOYERS                                    APPELLANTS
COUNCIL, INC. AND S. LORRIE
RAY

V.

COBB MECHANICAL CONTRACTORS,                                     APPELLEE
INC.

------------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## **MEMORANDUM OPINION**[1]

------------

### I. INTRODUCTION

This is an interlocutory appeal by Appellants Mountain States Employers

Council, Inc. and S. Lorrie Ray from the trial court's order denying their special

appearance in a legal malpractice action filed by Appellee Cobb Mechanical

---

[1] *See* TEX. R. APP. P. 47.4.

Contractors, Inc. ("CMC").[2]  For the reasons set forth below, we will affirm the trial court's order.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Mountain States is a Colorado nonprofit corporation.  Employers may become "members" of Mountain States by completing an application and paying dues.  Mountain States then assists its members with employment and labor matters.  Mountain States's principal employees are licensed attorneys, one of whom was S. Lorrie Ray, an individual residing in Colorado.  CMC was a member of Mountain States.

CMC is a Colorado corporation with its principal place of business in Colorado Springs, Colorado.  In 1993 and 1994, CMC performed mechanical work for two prisons being built in Potter County, Texas, and Dallam County, Texas.  The United Association of Plumbers and Pipe Fitters, Local Union No. 196, AFL-CIO filed an unfair labor practice charge with the National Labor Relations Board (NLRB), asserting that CMC had violated the Labor Management Relations Act by engaging in unfair hiring practices at the two Texas prison construction sites.  The NLRB in Fort Worth, Texas, issued a complaint and a notice of hearing.

---

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(7) (Vernon Supp. 2007).

About three months after the complaint issued, CMC engaged the services of Appellants to represent CMC in the NLRB proceeding. Appellants provided legal representation to CMC in connection with the Texas NLRB proceeding, including the pretrial investigation in Texas, the filings of briefs and other legal documents in Texas, and representation at the administrative trial before an administrative law judge (ALJ) in Amarillo, Texas, from November 8 through 10, 1994.

The ALJ ultimately rendered a decision adverse to CMC, concluding that CMC had committed unfair labor practices. The ALJ decision stated that "[i]f no exceptions are filed as provided by Sec. 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommend[ations] Order shall, as provided in Sec. 102.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes." Although Appellants—on behalf of CMC—prepared exceptions to the ALJ decision, the exceptions were not timely filed, and the NLRB subsequently adopted the ALJ's findings and conclusions because no statement of exceptions had been timely filed.

Appellants—again on behalf of CMC—filed a motion for reconsideration of the NLRB order. The NLRB declined reconsideration, and Appellants—on behalf of CMC—pursued a variety of legal remedies and compliance-phase

3

appeals and hearings for the next ten years. As a result, the NLRB proceeding took approximately eleven years to resolve and was finally settled in December 2005. Ultimately, CMC was ordered to pay certain sums to various individuals, plus interest and FICA withholding.

CMC brought the underlying legal malpractice action against Appellants in Texas state court for their alleged negligence in failing to adequately and properly represent CMC at the NLRB trial in Amarillo and for their failure to timely file a statement of exceptions to the ALJ decision. Appellants responded by filing a special appearance.

Based on the agreement of the parties,[3] the trial court ruled on Appellants' special appearance without an evidentiary hearing, after considering the live pleadings, Appellants' special appearance, CMC's response, Appellants' supplemental briefing in support of their special appearance, and CMC's response to Appellants' supplemental briefing. The trial court denied Appellants' special appearance. Appellants requested findings of fact and conclusions of law, but the record contains none. Appellants perfected this

---

[3] The record reflects that the trial court heard argument on the special appearance, recessed the hearing to permit the parties to file additional briefing and proof, and stated it would rule on the special appearance when the parties informed the trial court that they had filed everything necessary.

4

interlocutory appeal challenging the trial court's denial of their special appearance.

### III. AFFIDAVIT OBJECTION NOT PRESERVED

In their third issue, Appellants claim that the trial court abused its discretion if it considered the affidavit of CMC's President Tom Cobb in deciding to deny Appellants' special appearance. Appellants argue that statements in Cobb's affidavit are conclusory and that Cobb is not qualified or competent to testify about the standard of care for Appellants' representation of Cobb before the NLRB.

Appellants' complaints concerning Cobb's affidavit are not preserved for our review. Approximately one week before the special appearance hearing, CMC filed a second amended original petition and a response to Appellants' special appearance. Cobb's affidavit was attached to CMC's response. Appellants subsequently filed supplemental briefing in support of their special appearance and argued, in part, that "[w]hile these 'new' amended allegations are clearly intended to suggest that [Appellants] may *now* have engaged in potential tortious conduct in Texas, they are nothing more than bald, conclusory statements that should be disregarded by the Court." [Emphasis in original.] This statement in Appellants' supplemental briefing is directed at the amended allegations in CMC's second amended petition, not at Cobb's affidavit. Cobb's

5

affidavit is not mentioned. Nonetheless, this is the objection that Appellants rely on in making their arguments on appeal concerning Cobb's affidavit.

The record does not indicate that an objection to Cobb's affidavit, as opposed to CMC's second amended original petition, was ever specifically called to the trial court's attention or ruled upon. Under these circumstances, we hold that Appellants' objection to Cobb's affidavit was not preserved for our review. *See* TEX. R. APP. P. 33.1(a)(2); *Int'l Turbine Serv., Inc. v. Lovitt*, 881 S.W.2d 805, 808 (Tex. App.—Fort Worth 1994, writ denied).

Moreover, Appellants' objection to Cobb's affidavit—that Cobb is not qualified or competent to testify about the standard of care for Appellants' representation of Cobb before the NLRB—might have merit in a summary judgment proceeding; in the special appearance context, however, the issue is Mountain States's and Ray's contacts with Texas, which Cobb may and did testify to based on his personal knowledge. *See* TEX. R. CIV. P. 120a(3). Thus, if Mountain States's and Ray's appellate objection to Cobb's affidavit had been made and brought to the trial court's attention, the trial court would not have erred by overruling their objection because the objection is invalid in this context.

We overrule Appellants' third issue.

6

## IV. DENIAL OF SPECIAL APPEARANCE

In their first and second issues, Appellants complain that the trial court erred by denying their special appearance. Specifically, Appellants challenge the legal and factual sufficiency of the evidence to support the trial court's order denying their special appearance.

### A. Personal Jurisdiction

A Texas court may assert personal jurisdiction over a nonresident defendant if the requirements of the Texas long-arm statute and due process under the Fourteenth Amendment are satisfied. U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (Vernon 1997 & Supp. 2007); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868, 1871–72 (1984); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) (orig. proceeding); *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 845 (Tex. App.—Fort Worth 2006, no pet.); *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 668 (Tex. App.—Fort Worth 2001, no pet.).

The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *TravelJungle*, 212 S.W.3d at 845; *SITQ, E.U.,*

7

*Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 645 (Tex. App.—Fort Worth 2003, pet. denied). The statute lists some activities that constitute "doing business," including the commission of a tort, in whole or in part. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; *TravelJungle*, 212 S.W.3d at 845; *Reata*, 111 S.W.3d at 645. The list of activities set forth in section 17.042 is not exclusive, however. *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 845. Section 17.042's broad language extends Texas courts' personal jurisdiction only "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795 (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977), *cert. denied*, 434 U.S. 1063 (1978)); *TravelJungle*, 212 S.W.3d at 845; *Reata*, 111 S.W.3d at 645.

Due process is satisfied when (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 846; *Reata*, 111 S.W.3d at 645.

A nonresident defendant who has "purposefully availed" itself of the privileges and benefits of conducting business in a foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction on a court in

that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S. Ct. 2174, 2183 (1985); *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 846.

Three factors are important in determining whether a defendant has purposefully availed itself of the forum: first, only the defendant's contacts with the forum count; second, the acts relied on must be purposeful rather than merely fortuitous; and third, the defendant must seek some benefit, advantage, or profit by availing itself of the forum. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005); *Karstetter v. Voss*, 184 S.W.3d 396, 403 (Tex. App.—Dallas 2006, no pet.); *TravelJungle*, 212 S.W.3d at 846.

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia*, 466 U.S. at 413–14, 104 S. Ct. at 1872; *BMC Software*, 83 S.W.3d at 795; *TravelJungle*, 212 S.W.3d at 846; *Reata*, 111 S.W.3d at 646. A trial court has general jurisdiction over a nonresident defendant when that defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software*, 83 S.W.3d at 796; *TravelJungle*, 212 S.W.3d at 846; *Reata*, 111 S.W.3d at 646. In contrast,

9

specific jurisdiction is present if the nonresident defendant's alleged liability arises from or is related to an activity conducted within the forum. *BMC Software*, 83 S.W.3d at 796; *TravelJungle*, 212 S.W.3d at 846–47; *Reata*, 111 S.W.3d at 646. When a plaintiff asserts that a trial court has specific jurisdiction over a nonresident defendant, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227–28 (Tex. 1991); *TravelJungle*, 212 S.W.3d at 847; *Reata*, 111 S.W.3d at 646.

**B.    Standard of Review**

Whether a trial court has personal jurisdiction over a defendant is a question of law. *BMC Software*, 83 S.W.3d at 793; *TravelJungle*, 212 S.W.3d at 845; *Reata*, 111 S.W.3d at 644. The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moki Mac,* 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *TravelJungle*, 212 S.W.3d at 845; *Reata*, 111 S.W.3d at 644. A nonresident defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. *BMC Software*, 83 S.W.3d at 793; *TravelJungle*, 212 S.W.3d at 845; *Reata*, 111 S.W.3d at 644.

10

Where, as here, the trial court does not enter express findings of fact and conclusions of law regarding its ruling on a special appearance, the reviewing court infers all fact findings necessary to support the judgment that are supported by the evidence. *BMC Software*, 83 S.W.3d at 794–95. These implied findings may be challenged for legal and factual sufficiency. *Id.*; *TravelJungle*, 212 S.W.3d at 845; *Michel*, 45 S.W.3d at 668. Once it is determined that the trial court's findings are supported by sufficient evidence, or if the material facts are undisputed, the reviewing court decides as a matter of law whether those facts negate all bases for personal jurisdiction. *BMC Software*, 83 S.W.3d at 794–95.

Under the legal sufficiency standard of review, we view the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 827. There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the

11

opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied*, 523 U.S. 1119 (1998). More than a scintilla of evidence exists to support a finding if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.*

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985).

The scope of our review includes all evidence before the trial court on the issue of personal jurisdiction. *TravelJungle*, 212 S.W.3d at 845; *Reata*, 111 S.W.3d at 645; *Michel*, 45 S.W.3d at 667; *see also Hotel Partners v. Craig*, 993 S.W.2d 116, 121 (Tex. App.—Dallas 1994, writ denied) (stating that "[i]n determining whether [defendants] carried this burden" of negating all bases of personal jurisdiction, "we review all the evidence that was before the trial court"). The trial court here, based on the agreement of the parties, ruled on Appellants' special appearance without an evidentiary hearing after considering the live pleadings, Appellants' special appearance, CMC's response, Appellants' supplemental briefing in support of their special appearance, CMC's response

12

to Appellants' special appearance, and documents attached to these items. Consequently, we review these filings.

**C.     CMC's Allegations and Evidence of Specific Personal Jurisdiction**

CMC's second amended original petition, which the trial court expressly indicated that it had considered in ruling on Appellants' special appearance, alleged that the trial court possessed specific jurisdiction over Appellants because their contacts with the State of Texas were purposeful and the cause of action asserted arose from or relates to those contacts:

- Appellants agreed to represent CMC in connection with a complaint initiated by the Region 16 Director of the NLRB in Fort Worth, Texas, relating to job sites in Amarillo and Dalhart, Texas;

- In connection with the NLRB proceeding, Appellants filed an answer to the complaint with the NLRB in Fort Worth, Texas;

- In connection with the NLRB proceeding, Appellants made an appearance in the proceeding in Fort Worth, Texas;

- In connection with the NLRB proceeding, Appellants personally appeared in the State of Texas to represent CMC at a trial in Amarillo that occurred from November 8 through 10, 1994;

- In connection with the NLRB proceeding, Appellants personally appeared in the State of Texas to interview witnesses prior to trial;

- In connection with the NLRB proceeding, Appellants made multiple telephone calls to representatives of the NLRB in Texas;

- In connection with the NLRB proceeding, Appellants made multiple telephone calls to persons other than the NLRB;

13

- In connection with the NLRB proceeding, Appellants requested the issuance by the NLRB of subpoenas for witnesses to appear at the trial in Amarillo, Texas; and

- In connection with the NLRB proceeding, Appellants filed numerous pleadings and other matters with the NLRB in Fort Worth, Texas.

### D. Appellants' Special Appearance and Supplemental Briefing

Appellants' special appearance alleged that specific jurisdiction did not exist. Appellants argued that their representation of CMC evolved from the membership agreement that was executed in Colorado. Appellants also contend that their representation of CMC before a federal agency in Texas, rather than a Texas state court, falls short of the "purposeful availment" requirement. And finally, Appellants argue on appeal that the crux of CMC's malpractice claim concerns the untimely exceptions and point out that the exceptions were drafted in Colorado for filing in Washington, D.C.

In Ray's affidavit, which was attached in support of Appellants' special appearance, she averred that all research, preparations, pleadings, and correspondence pertaining to the NLRB proceeding originated in Mountain States's offices in Denver and that her contact with CMC occurred with personnel located at CMC's offices in Colorado Springs, Colorado. Ray admitted that she attended the hearing before the ALJ in November 1994. Ray stated that after the ALJ decision was rendered, she prepared exceptions at the

14

Denver office and sent them to the NLRB in Washington, D.C., via overnight mail. Ray concluded her affidavit by stating that she had not visited Texas as a representative of Mountain States for any reason other than the hearing in 1994.

Appellants' supplemental briefing in support of their special appearance claims that CMC "goes to great lengths to stretch the number of perceived specific jurisdictional contacts [Appellants] have with the State of Texas" but that their allegations exclusively relate to the three-day NLRB hearing in Texas. Appellants contend that this "case is, and has always been, about [Appellants'] alleged failure to timely file exceptions with the NLRB in Washington, D.C."

## E.    Specific Jurisdiction Analysis

CMC bore the initial burden of pleading sufficient facts to invoke personal jurisdiction over Appellants under the Texas long-arm statute. *Moki Mac*, 221 S.W.3d at 574 (citing *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002), *cert. denied*, 537 U.S. 1191 (2003)). Appellants then had the burden of negating all forms of personal jurisdiction that CMC alleged. *Id.*

Here, the facts pleaded by CMC, and indeed not disputed by Appellants, establish that Mountain States, through its attorneys including Ray, provided legal representation in connection with the NLRB proceeding before an ALJ of

15

the NLRB in a commissioner's courtroom in Amarillo, Texas. The proceeding concerned alleged unfair employment practices that had occurred in Texas. There is no evidence in the record that Appellants associated local counsel;[4] instead, Appellants traveled to Texas to investigate the claims, interviewed witnesses in Texas, filed pleadings and documents in Texas, obtained subpoenas from the NLRB in Texas, and made phone calls to Texas. As previously mentioned, CMC sued Appellants in Texas for alleged legal malpractice arising out of Appellants' legal representation of CMC in the Texas NLRB proceeding.

Allegations that a nonresident defendant did business in Texas by committing a tort (such as legal malpractice), in whole or in part, in Texas are sufficient to satisfy the literal language of the Texas long-arm statute but not due process concerns. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2); *Moki Mac,* 221 S.W.3d at 574–75; *Michiana,* 168 S.W.3d at 788; *TravelJungle*, 212 S.W.3d at 849. The Texas long-arm statute will reach as far as the federal constitutional requirements of due process allow. *Moki Mac*, 221

---

[4] In fact, Mountain States's website advertises that it provides employment law services to its members, including representation before any state or federal administrative agency, and that they represent their members where the action takes place. Mountain States Employers Council, Inc., http://www.msec.org (last visited June 26, 2008).

16

S.W.3d at 575 (citing *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226). Thus, we next analyze whether, here, in this case, Texas's exercise of personal jurisdiction over Appellants is limited by due process concerns.

As previously mentioned, federal due process requirements limit a state's power to assert personal jurisdiction over a nonresident defendant; personal jurisdiction is proper when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Moki Mac*, 221 S.W.3d at 575. We thus proceed to a minimum contacts analysis. Here, Appellants purposefully availed themselves of the privilege of conducting activities (legally representing CMC) in Texas. Appellants invoked the benefits and protections of Texas law by interviewing witnesses, filing legal documents, and obtaining the issuance of subpoenas. These contacts with Texas were the contacts of Appellants, not the unilateral activity of another party or a third person. These contacts by Appellants with Texas were purposeful, not random, fortuitous, or attenuated. And Appellants sought some benefit—here the providing of services to its paid members—by availing themselves of the opportunity to represent its members in Texas. *See, e.g.*, *Jackson v. Kincaid*, 122 S.W.3d 440, 449–50 (Tex. App.—Corpus Christi 2003, pet. granted, judgm't vacated w.r.m.) (holding that Texas court possessed specific

17

jurisdiction over nonresident attorney defendant); *see also Tempest Broad. Corp. v. Imlay*, 150 S.W.3d 861, 876 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (same); *Rowland & Rowland, P.C. v. Tex. Employers Indem. Co.*, 973 S.W.2d 432, 436 (Tex. App.—Austin 1998, no pet.) (same).

We next address the "arise from or relate to" requirement of specific jurisdiction. *Moki Mac*, 221 S.W.3d at 579–80. Appellants claim that their actions in Texas do not arise from and are not related to CMC's causes of action against it because CMC's causes of action against it actually arise from CMC's membership contract with Mountain States.[5] Appellants claim that the

---

[5] In support of their no-specific-jurisdiction-exists arguments, Appellants cite several legal malpractice cases, including *Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 468–69 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that Texas client did not plead facts sufficient to give rise to specific jurisdiction because Indiana attorney and firm, who were hired to represent Texas client in action pending in Indiana, were not substantially connected to the operative facts of the litigation by merely giving legal advice about Texas law); *Klenk v. Bustamante*, 993 S.W.2d 677, 679–81, 683 (Tex. App.—San Antonio 1998, no pet.), *abrogated on other grounds by BMC Software*, 83 S.W.3d 789 (holding that assertion of jurisdiction over in-house counsel from Smith Barney's New York headquarters was improper as a matter of law where, at most, the attorneys engaged in long-distance communication from New York with the Texas appellee, who was a former employee of Smith Barney); *Shearson Lehman Bros., Inc. v. Hughes, Hubbard, & Reed*, 902 S.W.2d 60, 63, 65–66 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (holding that Los Angeles firm's contacts with Texas were inadequate to establish specific jurisdiction because client's claims against firm did not arise as a result of firm's contacts with Texas during security registration process), *cert. denied*, 517 U.S. 1245 (1996); *Geo-Chevron Ortiz Ranch #2 v. Woodworth*, No. 04-06-00412-CV, 2007 WL 671340, at *3 (Tex. App.—San Antonio Mar. 7, 2007,

18

contract was entered into between Colorado residents in Colorado and that CMC's claims should be litigated in Colorado. CMC's pleadings, however, clearly state a cause of action for legal malpractice by alleging that Defendants "negligently failed to defend and advise Plaintiff with respect to the NLRB proceedings, including the compliance proceedings." The trial court did not abuse its discretion by construing CMC's pleadings as pleading a tort cause of action or by rejecting Appellants' attempts to recast CMC's claims purely as one for breach of contract.

For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 584–85. Appellants agreed to represent CMC at an NLRB proceeding in Texas and their alleged legal malpractice occurred during the course of that representation. There is a substantial connection between Appellants' contacts with Texas and the operative facts of the litigation. *See, e.g., Tempest Broad. Corp*., 150 S.W.3d at 876 (holding that nonresident defendant attorney's

---

pet. denied) (mem. op.) (holding that attorney and law firm's sporadic contacts of two litigation-related trips to Texas and communications by telephone were not sufficient to confer *general* jurisdiction where litigation occurred in Georgia). As is apparent from the preceding parentheticals, each case cited by Appellants is factually distinguishable from the present case.

representations in Texas that formed the basis of plaintiff's misrepresentation and tortious interference with contract claims supported trial court's exercise of specific jurisdiction).

Appellants also claim that the relatedness requirement between Appellants' contacts and CMC's claims is lacking because (1) the heart of CMC's legal malpractice claim involves Appellants' alleged failure to timely file exceptions, and the exceptions were prepared in Colorado to be filed in Washington, D.C.; and (2) it was CMC's actions in engaging in an unfair labor practice that resulted in the proceeding in Texas, not Appellants' actions, and thus Appellants cannot be said to have chosen Texas as a forum. The Corpus Christi Court of Appeals addressed arguments similar to those raised by Appellants in *Jackson v. Kincaid*. 122 S.W.3d at 449–50. In *Jackson*, Oklahoma lawyers provided legal representation in connection with their clients' bankruptcy proceedings in a Texas federal bankruptcy court. *Id.* at 444, 448. The Oklahoma lawyers appeared in bankruptcy court in Texas on their clients' behalf and also conducted telephone hearings and prepared and transmitted to Texas a mediation settlement. *Id.* at 446. The clients sued their Oklahoma lawyers in Texas, alleging a cause of action for legal malpractice, among others. *Id.* at 444. In filing their special appearance, the Oklahoma lawyers argued that the bulk of the legal representation that they provided in connection with the

20

bankruptcy was performed in Oklahoma and that they did not have a choice about the forum, which their clients had chosen. *Id.* at 449–50.

The *Jackson* court stated that the Oklahoma lawyers had a choice about whether to represent their clients in Texas, that the Oklahoma lawyers chose to do so, and that they were—via their special appearance—seeking to avoid the consequences of that choice. *Id.* at 450. The *Jackson* court thus determined that the Oklahoma lawyers reasonably could have anticipated being called into a Texas court because their activities in providing legal representation in connection with the bankruptcy included direct acts within Texas as well as conduct outside Texas and that such contacts were not random, fortuitous, or incidental but instead each lawyer's appearance was a substantial, purposeful contact directed at the State of Texas. *Id.* The *Jackson* court ultimately held that the clients' causes of action related to or arose from the Oklahoma lawyers' appearances and legal representation on behalf of their clients in the bankruptcy and that the Oklahoma lawyers did not meet their burden of negating specific jurisdiction as a basis for the trial court's exercise of jurisdiction. *Id.*

The *Jackson* court's reasoning applies here as well. Although some of the preparation that Appellants performed for the NLRB proceeding took place outside Texas, CMC's cause of action for legal malpractice specifically relates

21

to Appellants' legal representation in a proceeding before an ALJ in Texas. Appellants did not associate local counsel but undertook to represent CMC in a legal proceeding that Appellants knew was pending in Texas. Because Appellants chose to represent CMC in Texas, they cannot now seek to avoid the consequences of that choice. The evidence demonstrates that Appellants' contacts with Texas were not random, fortuitous, or incidental and that a substantial connection exists between Appellants' purposeful contacts with Texas and the operative facts of CMC's legal malpractice claim. *See id.* at 449–50; *Cartlidge v. Hernandez*, 9 S.W.3d 341, 348–50 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Finally, we analyze whether the trial court's assertion of jurisdiction over Appellants comports with "traditional notions of fair play and substantial justice." In making this determination we consider the following factors: (1) the burden on the defendants; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *Asahi Metal Indus. Co. v. Superior Court of Ca.,* 480 U.S. 102, 113–16, 107 S. Ct. 1026, 1033–34 (1987); *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184;

22

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980). Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts in the forum state. *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 231; *see also Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex. 1990) (stating that because minimum contacts analysis encompasses so many fairness considerations, it has become less likely that exercise of jurisdiction will fail fair-play analysis).

Here, Appellants argue that Texas does not have a compelling interest to supply a forum for resolution based again on their characterization of CMC's claims as ones for breach of a contract entered into in Colorado between Colorado residents, that the evidence is located primarily in Colorado, that their offices are in Colorado, and that it would be burdensome for them to submit to a foreign state's judicial process. As we have previously stated, CMC pleaded a cause of action for legal malpractice. And the State of Texas has a substantial interest in this litigation because Appellants agreed to represent CMC, knowing that the proceedings were based in Texas; the complaint had issued from the Fort Worth office of the NLRB; and the alleged unfair labor practices occurred in Texas. Appellants, moreover, proved their willingness to travel to Texas when they appeared on CMC's behalf for the NLRB hearing.

23

Appellants' arguments that they lack a physical presence in this State and that it is inconvenient for them to attend a trial in Texas have been rejected as grounds purportedly negating specific jurisdiction. *See, e.g., Cartlidge*, 9 S.W.3d at 350 (citing *Burger King*, 471 U.S. at 475–76, 105 S. Ct. at 2174).[6] Other than the arguments and positions we have addressed, Appellants have not identified any considerations that would render jurisdiction in Texas unreasonable or that provide them with a vested right not to be sued in Texas. *See Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184–85. We therefore hold that the trial court's exercise of personal jurisdiction over Appellants would not offend traditional notions of fair play and substantial justice. *See Tempest Broad. Corp.*, 150 S.W.3d at 877*; Jackson*, 122 S.W.3d at 451; *Cartlidge*, 9 S.W.3d at 350; *Rowland & Rowland*, 973 S.W.2d at 436.

Inferring all fact findings necessary to support the judgment that are supported by legally and factually sufficient evidence in the record before us, and viewing all of the evidence considered by the trial court in ruling on the special appearances, we hold that as a matter of law the facts do not negate the trial court's exercise of specific jurisdiction over Appellants. *See BMC*

---

[6] While the inconvenience of the forum is to be considered, it is not a constitutional obstacle to the assertion of jurisdiction if due process is otherwise satisfied. *Cartlidge*, 9 S.W.3d at 350.

*Software*, 83 S.W.3d at 794–95.  Accordingly, we overrule Appellants' first and second issues.

## V.  CONCLUSION

Having overruled Appellants' three issues, we affirm the trial court's order denying their special appearance.

SUE WALKER
JUSTICE

PANEL A:   CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED: July 3, 2008